DECISION AND JUDGMENT ENTRY
{¶ 1} William Monroe appeals his convictions for rape, assault, and abduction on the basis the trial court erred in denying his motion to suppress DNA evidence obtained while he was in jail. He contends the detective who took the sample violated his Sixth Amendment right to counsel as he failed to inform Monroe that counsel could be present. Because the taking of a DNA sample is not a critical stage of the proceeding, we conclude the Sixth Amendment right to counsel was not implicated here.
 {¶ 2} Second, Monroe contends that the trial court violated his statutory right to a speedy trial. We conclude the trial court's suasponte continuance, which charged the time to Monroe, explained the reasons for the continuance, and was reasonable in length, tolled the speedy trial clock. Furthermore, *Page 2 
Monroe's failure to respond to the state's reciprocal discovery requests within a reasonable time also tolled the time. Accordingly, there was no violation of Monroe's right to a speedy trial.
 {¶ 3} Third, Monroe contends the trial court erred in sentencing him on both his convictions of rape and abduction because they are allied offenses of similar import. The record indicates Monroe restrained his victim far in excess of the time involved in the sexual assaults. Monroe also refused to take her home after she requested this several times during the car ride to his house. Moreover, the ride from Portsmouth where Monroe picked her up, to Lucasville where he lived, involved a significant distance. Monroe also removed her from his home after the assault and drove her to another location before finally releasing her. We conclude that based on these actions, Monroe committed the offenses of rape and abduction of Nichols separately and with a separate animus as to each offense. Accordingly, we overrule Monroe's third assignment of error.
 {¶ 4} Fourth, Monroe contends that the trial court committed prejudicial error when it instructed the jury on the inference it could draw from his flight. An instruction on flight was appropriate because testimony indicated deputies searched for Monroe for a period of over seven months, and they ultimately found him hiding inside a wall of a trailer. Accordingly, Monroe's fourth assignment of error has no merit.
 I. Facts {¶ 5} On September 4, 2004, Krista Nichols suffered a brutal sexual assault. After she reported the incident, a warrant for Monroe's arrest issued on *Page 3 
September 7, 2004. On March 16, 2005, Deputies of the Scioto County Sheriffs Office searched a trailer located in West Portsmouth and arrested Monroe after finding him hiding inside a wall. The state charged Monroe with one count of rape, one count of felonious assault, and one count of abduction.
 {¶ 6} Asserting a violation of the Sixth Amendment to the U.S. Constitution, Monroe filed a motion to suppress DNA evidence obtained from a saliva sample taken from him while in jail. Monroe argued the evidence should have been suppressed because it was the fruit of an unconstitutional search and seizure. Additionally, Monroe argued that the search was conducted without a warrant, and the detective obtained his saliva sample without effective consent.
 {¶ 7} The trial court held a hearing on the motion and concluded a search warrant was unnecessary because Monroe had given his consent. The court also concluded there was no coercion and that Monroe freely and voluntarily gave consent by signing a waiver. Accordingly, the court denied the motion.
 {¶ 8} Next, Monroe moved the trial court to dismiss the indictment for violating his statutory right to a speedy trial. The trial court overruled this motion and the case proceeded to a jury trial.
 {¶ 9} At trial the complaining witness, Krista Nichols, testified that in the early morning hours of September 4, 2004, Monroe picked her up in his car while she waited for a friend on Findley Street in Portsmouth. Nichols testified that she asked Monroe to take her to a nearby Kroger's to use the restroom. Instead, they went to a convenience store in West Portsmouth, and Monroe asked Nichols to purchase "Chore Boy" and a "stem," items used in smoking crack *Page 4 
cocaine. Nichols went inside the store, used the restroom, and bought the items Monroe requested. Monroe asked Nichols to go to his house with him. Nichols testified that she told Monroe that she needed to go back to Portsmouth instead.
 {¶ 10} Despite her request, Monroe drove Nichols to his home in Lucasville. Nichols testified that she again asked Monroe to take her back to Portsmouth, but he refused, saying that his license was suspended. Monroe and Nichols went inside the house and smoked crack cocaine. Then, Nichols testified that Monroe approached her from behind, physically restrained her, and told her to lie down on a mattress on the floor. Nichols testified that Monroe proceeded to sexually assault her and brutally beat her for a period of two to three hours. After the assault, Nichols testified that Monroe drove her to a gas station in Lucasville, gave her two dollars for a pack of cigarettes, and left her there.
 {¶ 11} After the jury found Monroe guilty on all three counts, the court sentenced him to prison with consecutive sentences totaling 19 years.
 {¶ 12} Monroe filed this appeal and asserts the following assignments of error:
 I. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE DNA RESULTS, IN THAT THE STATE OBTAINED APPELLANT'S SALIVA IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.
 II. THE TRIAL COURT ERRED IN NOT DISMISSING THE INDICTMENT PER APPELLANT'S STATUTORY RIGHT TO A SPEEDY TRIAL.
 III. THE TRIAL COURT ERRED IN SENTENCING APPELLANT ON THE CONVICTIONS OF ABDUCTION AND RAPE, FOR THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT. *Page 5 
 IV. THE TRIAL COURT ERRED IN PROVIDING THE JURORS WITH AN INSTRUCTION ON FLIGHT.
 II. Motion to Suppress {¶ 13} In his first assignment of error, Monroe contends that the trial court erred by denying his motion to suppress DNA evidence obtained while he was in jail. Monroe argues the detective violated hisSixth Amendment right to counsel because the detective questioned him and obtained his consent in the absence of counsel. Monroe also argues that the waiver he signed before giving his saliva sample did not inform him of his Sixth Amendment rights.
 {¶ 14} At the hearing on the motion to suppress, Detective Keller testified that after Monroe's initial appearance in court, he visited Monroe in the Scioto County Jail to obtain saliva samples for DNA purposes. Before requesting Monroe's consent to provide saliva, Keller testified he explained the complaint to Monroe and told him the victim's name. He also testified he read the entire "Consent to Search" form to Monroe and explained that he needed a sample of DNA evidence to compare to DNA evidence obtained from the victim. Keller testified he then obtained Monroe's written and oral consent to take the saliva sample.
 {¶ 15} Monroe testified Keller read the "Consent to Search" to him and then asked for his saliva sample in the following manner: "you can sign this waiver and give us the saliva samples or we can go down and get a warrant." Monroe and Detective Keller agreed that Keller did not offer Monroe the *Page 6 
opportunity to have his attorney present until after the collection of saliva had concluded.
 {¶ 16} Appellate review of a trial court's decision regarding a motion to suppress involves mixed questions of law and fact. State v.Long, (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1, 3. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. State v. Dunlap, 73 Ohio St.3d 308, 314,652 N.E.2d 988. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See Dunlap; State v. Guysinger (1993), 86 Ohio App.3d 592,594, 621 N.E.2d 726, 727. Without deference to the trial court, the reviewing court then must independently determine whether the trial court properly applied the substantive law to the facts of the case. Id.
 {¶ 17} A motion to suppress is usually defined as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation [,] etc.), of U.S. Constitution." State v.French (1995), 72 Ohio St.3d 446, 449, 650 N.E.2d 887, citing Black's Law Dictionary (6 Ed. 1990) 1014.
 {¶ 18} Monroe frames the issue in terms of his Sixth Amendment right to counsel, which attaches at the initiation of adversary judicial criminal proceedings, whether by formal charge, preliminary hearing, indictment, *Page 7 
information, or arraignment. State v. Lee (Nov. 23, 1985), Gallia App. No. 83CA17, 1986 WL 2028, at 13, citing Kirby v. Illinois (1972),406 U.S. 682, 689-690, 92 S.Ct. 1877. Once the right to counsel has attached, the defendant's own incriminating statements obtained by the police in the absence of counsel may not constitutionally be used by the prosecution as evidence. Lee, supra, at 28; Massiah v.United States (1964), 377 U.S. 201, 84 S.Ct. 1199, (emphasis added).
 {¶ 19} After the right to counsel has attached, the defendant is entitled to the representation of counsel, if desired, at any "critical stage" of the criminal proceedings against him. United States v.Wade (1967), 388 U.S. 218, 236-237, 87 S.Ct. 1926, 1937-1938. When defining a "critical stage," the United States Supreme Court inWade stated: "in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. . . The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution. Wade, 388 U.S. 218, 226-227.
 {¶ 20} In this case, Monroe's Sixth Amendment right to counsel had attached because he had been formally charged and appeared in court. Accordingly, we must determine whether the taking of his saliva sample constituted a "critical stage" of the criminal proceeding against him. Generally, the taking of fingerprints, samples of blood, hair or clothing, is not deemed a *Page 8 
critical stage because "the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts." Id. at 227-228. Additionally, the Second Circuit of the United States Court of Appeals concluded that a "consent to search is not a critical stage of a criminal litigation." United States v. Kon Yu-Leung (2nd Cir. 1990),910 F.2d 33, 34.
 {¶ 21} Because Monroe had the opportunity at trial to produce evidence and cross-examine the State's witnesses concerning the validity of the saliva sample, we conclude Detective Keller's actions in taking that sample did not constitute a "critical stage" in the criminal proceedings against Monroe. Accordingly, Detective Keller did not violate Monroe'sSixth Amendment right to counsel. See Wade, supra, andYu-Leung, supra.
 {¶ 22} The Sixth Amendment also protects an accused from making incriminating statements without counsel. Here, however, Monroe does not allege that he made any incriminating statements to Detective Keller. Monroe's first assignment of error is meritless.
 III. Speedy Trial {¶ 23} In his second assignment of error, Monroe contends that the trial court erred in denying his motion to dismiss the indictment based on the State's failure to comply with the speedy trial requirements set forth in R.C. 2945.71 through R.C. 2945.73. *Page 9 
 {¶ 24} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant a speedy trial by the State.State v. Ladd (1978), 56 Ohio St.2d 197, 200, 383 N.E.2d 579. Additionally, Article I, Section 10 of the Ohio Constitution provides that all criminal defendants have a right to a speedy trial. However, the constitutions do not specify any timeline required to ensure the protection of this right.
 {¶ 25} The statutory speedy trial provisions contained in R.C. 2945.71
through R.C. 2945.73 are coextensive with the speedy trial mandates of the federal and Ohio constitutions. State v. King (1994),70 Ohio St.3d 158, 160, 637 N.E.2d 903; see, also, State v. Pachay (1980),64 Ohio St.2d 218, 416 N.E.2d 589, syllabus. Because they are designed to implement constitutional guarantees, the speedy trial statutes are mandatory and strictly enforced against the state. Id.; see, also,State v. Montgomery (1980), 61 Ohio St.2d 78, 80, 399 N.E.2d 552. R.C.2945.71(C)(2) provides that a criminal defendant, charged with a felony, shall be brought to trial within 270 days of his or her arrest. Under R.C. 2945.71(E), each day that a defendant is incarcerated in lieu of bond shall count as three (3) days. R.C. 2945.72 provides that the time for bringing a criminal defendant to trial may be extended for certain periods of time, including: (D) any period of delay occasioned by the neglect or improper act of the accused; (E) any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused; and (H) the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion. *Page 10 
 {¶ 26} The state bears the burden of bringing an accused to trial within the statutorily required time. State v. Singer (1977),50 Ohio St.2d 103, 105-06, 362 N.E.2d 1216. When reviewing speedy trial issues, we are presented with a mixed question of law and fact. State v.Hiatt (1997), 120 Ohio App.3d 247, 261, 697 N.E.2d 1025. While we accept the trial court's factual findings if supported by competent, credible evidence, we review the trial court's application of the law to those facts de novo. Id.
 {¶ 27} An accused presents a prima facie case for discharge by demonstrating that his case was pending for a time exceeding the statutory limits provided in R.C. 2945.71. State v. Butcher (1986),27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368. The burden then shifts to the state to show that the time limit was extended under R.C. 2945.72.Id. at 31, 500 N.E.2d 1368. We construe extensions of time under R.C.2945.72 strictly against the state. Singer, 50 Ohio St.2d at 109,362 N.E.2d 1216.
 {¶ 28} Monroe has presented a prima facie case for discharge by showing that his case was pending for a time exceeding the statutory limit. Monroe was in jail solely on the charges at issue in this case from March 16, 2005, the date of his arrest, until his trial date on October 17, 2005, for a total of 215 days. Because Monroe was incarcerated, each day counts as three, for a total of 645 days for speedy trial purposes. See R.C. 2945.71 (E).
 {¶ 29} The State argues that the speedy trial time was tolled by several acts taken by Monroe. Of these, Monroe concedes the time was tolled from April 27, 2005, until May 3, 2005, due to his filing of a request for discovery and a *Page 11 
demand for a bill of particulars, and from May 13, 2005, until July 13, 2005, due to his filing of numerous motions. After subtracting the 62 days tolled by Monroe's concessions, the total number of days that Monroe contends should apply to the speedy time trial is 153 (459 days for speedy trial purposes).
 {¶ 30} The State further contends that Monroe's speedy trial time was tolled by: 1) the State's reciprocal discovery requests, and 2) the trial court's sua sponte entry continuing the trial due to a congested docket and the court's need to rule on Monroe's pending motions. Monroe concedes that if we find either of these events did toll his speedy trial time, then the state has not violated his statutory right to a speedy trial.
 A. Continuance {¶ 31} We first consider the trial court's sua sponte entry continuing the trial. The court initially set Monroe's trial date for July 25, 2005, a date that would have been within the speedy time trial limitations. On July 27, 2005, the court journalized a sua sponte entry stating a continuance was necessary due to an "overcrowded docket" because of four jury trials scheduled on the same day, and pending motions filed by Monroe. The court did not set a new trial date in its entry, but it did state that the delay would toll the time for speedy trial purposes.
 {¶ 32} R.C. 2945.72(H) authorizes the extension of the speedy trial time by "the period of any reasonable continuance granted other than upon the accused's own motion[.]" A trial court's congested docket has been recognized as a reasonable basis for a continuance pursuant to R.C.2945.72(H). See State v. Lee (1976), 48 Ohio St.2d 208, 357 N.E.2d 1095. However, the trial record *Page 12 
must affirmatively demonstrate the need and the reasonableness of the continuance. Aurora v. Patrick (1980), 61 Ohio St.2d 107,399 N.E.2d 1220. To be effective, the trial court must record the continuance through its journal entry prior to the expiration of the speedy trial time, identify the party to be charged with the continuance, and briefly indicate the reasons requiring the continuance. State v. Webb, Washington App. No. 01CA32, 2002 WL 1565686, at 3, citing State v.Reuschling (1986), 30 Ohio App.3d 81, 82-83, 506 N.E.2d 558.
 {¶ 33} Here, the trial court's continuance satisfied those requirements. First, the court recorded its sua sponte entry on July 27, 2005, well before the expiration of the speedy trial time. Second, the court indicated the continuance was necessary due to four other jury trials scheduled on that day, and the court's need to rule on Monroe's pending motions.[1] Third, the court identified the party to be charged with the continuance by stating that it was necessary due to Monroe's pending motions.
 {¶ 34} Monroe relies on State v. Pudlock (1975), 44 Ohio St.2d 104,338 N.E.2d 524, to support his argument that the continuance was ineffective. Pudlock, however, is distinguishable. There, the trial court improperly extended the speedy time trial limits by issuing a continuance after the speedy trial time had expired. Here, the trial court issued its continuance well before the speedy trial time would have expired. Therefore, Pudlock is inapposite.
Next, we consider whether the length of the continuance was reasonable. The trial court continued the case from July 27, 2005, until the trial date on *Page 13 
October 17, 2005, a period of eighty-two days. In State v. Saffell
(1998), 35 Ohio St.3d 90, 518 N.E.2d 934, the Ohio Supreme Court held that "it is difficult, if not unwise, to establish a per se rule of what constitutes `reasonableness'" when determining the length of a continuance for speedy trial purposes. Saffell, 35 Ohio St.3d at 91. The Court further stated, "[i]nvariably, resolution of such a question depends on the peculiar facts and circumstances of a particular case."Id.
 {¶ 35} The circumstances of this case indicate the length of the trial court's continuance was reasonable. First, as the court stated in its entry, the continuance was necessitated by the fact that four other jury trials were scheduled for the same date as the original trial date. This indicates the existence of a crowded docket that would not allow rescheduling quickly.
 {¶ 36} The continuance was also necessary in part in order for the court to rule on the following defense motions: 1) motion to preserve and produce DNA for analysis at State's expense, 2) motion to dismiss sexually violent predator specification, 3) motion for an investigator at State's expense, and 4) motion for determination of Monroe's indigent status. We conclude that in light of Monroe's pending motions, and the apparently congested docket, i.e., many matters competing for limited time, it does not seem unreasonable to need 82 days to decide the motions and find another available trial date.
 {¶ 37} Thus, we conclude the continuance tolled Monroe's speedy trial time from July 27, 2005, until October 17, 2005, within the speedy trial time requirements of R.C. 2945.71. *Page 14 
 B. Reciprocal Discovery {¶ 38} Monroe also contends that the trial court erred by tolling his speedy time trial due to the State's filing of a reciprocal discovery request. Monroe argues because the State failed to obtain an order compelling him to comply with the reciprocal discovery request, the speedy time trial did not stop.
 {¶ 39} The Ohio Supreme Court held, "[t]he failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." State v. Palmer
(2007),___S.Ct.___, 860 N.E.2d 1011, 2007 WL 284173, at Syllabus 1. The Court further held, "the tolling of statutory speedy-trial time based on a defendant's neglect in failing to respond within a reasonable time to a prosecution request for discovery is not dependent upon the filing of a motion to compel discovery by the prosecution." Id. at ¶ 24.
 {¶ 40} Here, the State filed its reciprocal discovery request on May 2, 2005, requesting inspection of certain evidence and a list of the witnesses Monroe intended to call at trial. Monroe responded to the State's request with his list of witnesses on October 11, 2005, six days before trial.
 {¶ 41} We conclude that Monroe's failure to respond to the State's reciprocal discovery request for 162 days constitutes an unreasonable amount of time and tolled his speedy trial time. Furthermore, underPalmer, the State was not required to file a motion to compel before the time tolled. Accordingly, we overrule Monroe's second assignment of error. *Page 15 
 IV. Allied Offenses {¶ 42} In his third assignment of error, Monroe contends that the trial court erred in sentencing him both on his conviction for rape and his conviction for abduction. Monroe contends the act of abduction is an allied offense of similar import to the charge of rape, and, accordingly, the trial court erred by failing to merge the convictions on both charges.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 43} In State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, the Ohio Supreme Court established the analysis for determining whether the multiple-count statute prohibits separate punishment for two offenses. The first step is to determine whether the offenses are "allied offenses of similar import" within the meaning of R.C. 2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other'." Id. at 636, 710 N.E.2d 699, quoting State v.Jones (1997), 78 Ohio St.3d 12, 13, 676 N.E.2d 80. If not, the court's inquiry ends. The crimes are considered offenses of dissimilar import and the defendant may be convicted (i.e. found guilty and punished) for both. Rance at 636, 710 N.E.2d 699, citing R.C. 2941.25(B). If the elements do correspond in the manner *Page 16 
described, the court must proceed to a second step. The defendant'sconduct is reviewed to determine if the crimes were committed separately or with a separate animus for each crime; if so, the defendant may be convicted of both. See Jones, 78 Ohio St.3d at 14, 676 N.E.2d 80.
Because the second step of the analysis is dispositive here, we do not address the first step of the analysis.
 {¶ 44} In State v. Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, the Supreme Court of Ohio held that a separate animus exists as to each offense "where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," Logan, at 60 Ohio St.2d 126,397 N.E.2d 1345, paragraph (a) of the syllabus. See also, State v.Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 46-47.
 {¶ 45} Monroe's abduction of Nichols involved prolonged restraint, lasting over a period of hours, beginning when Monroe drove Nichols past the Kroger's, as she had requested, to a gas station. Nichols testified that during the drive past Kroger's and on to Monroe's house in Lucasville, she asked Monroe several times to take her back home, but he refused. The actual transportation of Nichols from Portsmouth to Lucasville amounts to substantial movement of the victim. She further testified that during the forty-five minute period that she and Monroe used crack cocaine at Monroe's house, she repeatedly asked him to take her home, but he again refused. Then, she testified that she walked towards the *Page 17 
door to leave, but Monroe hugged her from behind, told her to lie down on a mattress, and began his sexual assault.
 {¶ 46} Nichols testified that the sexual assault lasted for two to three hours. During the assault, Monroe got up several times to go into the kitchen and forced Nichols into the kitchen on one occasion. Nichols further testified that Monroe repeatedly hit her in the face and body when he restrained her in between the separate sexual assaults. Thus, the restraint increased the risk of harm beyond that of the commission of the rape.
 {¶ 47} Finally, after the sexual and physical assaults ended, Monroe again transported the victim to another site before releasing her.
 {¶ 48} Applying the factors noted in Logan, supra, we conclude that Monroe committed the offenses of abduction and rape separately and with a separate animus to each offense. Monroe's third assignment of error is meritless.
 V. Jury Instruction {¶ 49} In his fourth assignment of error, Monroe contends that the trial court committed prejudicial error when it instructed the jury on flight. The trial court gave the following instruction:
 Testimony has been provided by the State indicating the Defendant concealed himself from law enforcement officers. In regard to this evidence you are instructed that flight from justice, concealment, assumption of a false name, and related conduct in and of itself does not raise a presumption of guilt but it may tend to show a consciousness of guilt on the Defendant or a guilty connection with the crime. If you find that the defendant's conduct was not motivated by a conscious of guilt, it should be guilt there, or if you are unable to determine what the defendant's motive was you should not consider this evidence for any purpose; however, if you *Page 18 
find that the testimony is true and if you find that the defendant's conduct was motivated by a consciousness of guilt you may consider that evidence in determining whether or not the defendant is guilty of one or more of the offenses charged. You alone will determine the weight, if any, to be given to this evidence. (sic)
 {¶ 50} The law requires a trial court to give the jury all instructions that are relevant and necessary for the jury to properly weigh the evidence and reach their verdict as the fact finder. State v.Comen (1990), 50 Ohio St.3d 206, 443 N.E.2d 640, paragraph two of the syllabus. The jury instructions "must be based upon the actual issues in the case as presented by the evidence." State v. Tompkins (Oct. 25, 1996), Clark App. No. 95-CA-0099, 1996 WL 612855, citing State v.Scimemi (June 2, 1995), Clark App. No. 94-CA-58, 1995 WL 329031. Where it is possible that "reasonable minds might reach the conclusion sought by the specific instruction" the court must provide guidance to the jury. See Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,575 N.E.2d 828. While the actual wording of the charge is left to the court's discretion, the need for an instruction presents a question of law. Id.
 {¶ 51} Evidence of flight is admissible to show consciousness of guilt. State v. Taylor, 78 Ohio St.3d 15, 27, 676 N.E.2d 82. An instruction on flight is proper if the record contains sufficient evidence to support the charge. United States v. Dillon (C.A.6, 1989),870 F.2d 1125, 1126.
 {¶ 52} Here the trial court properly instructed the jury on flight. The record indicates that the offense occurred on September 4, 2004, and Sheriffs deputies searched for Monroe until his arrest on March 16, 2005, a period of more than seven months. Furthermore, the deputies found Monroe hiding in wall in a trailer. *Page 19 
These facts create sufficient basis for instructing the jury on the implications of flight. Looking briefly at the substance of the charge, the Ohio Supreme Court has upheld the use of an instruction on flight similar to the one given here. Taylor, 78 Ohio St.3d at 27 ("instruction on flight was neither arbitrary nor unreasonable, and did not create an improper mandatory presumption"). {1153} Accordingly, we overrule Monroe's fourth assignment of error.
 JUDGMENT AFFIRMED. *Page 20 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.
[1] The court failed to indicate whether the pending jury trials were civil or criminal cases and failed to indicate the length of time they had been pending. In a closer case, this could be fatal. *Page 1