DECISION AND JUDGMENT ENTRY
{¶ 1} After an Athens County jury found Joseph Babu guilty of one count of misdemeanor assault, the trial court sentenced him to a 120-day term of incarceration with 30 days of the sentence suspended. The charge stemmed from an incident during which Babu kicked the victim in the face as others punched, kicked, and stomped him. Babu asserted that he acted in self-defense.
 {¶ 2} First, Babu argues that the trial court erred in instructing the jury that it could infer consciousness of guilt if the jury found that Babu fled from the scene after the victim's beating. The State presented evidence that Babu had run from the scene as police arrived and that police found him some distance from where the incident occurred and walking away from it. Babu testified that he left the scene as he heard the sound of sirens. Because the evidence presented at trial could reasonably be found to *Page 2 
prove that Babu had fled from the scene, the trial court did not err in instructing the jury on flight.
 {¶ 3} Second, Babu argues that the jury's verdict is against the manifest weight of the evidence because he established that he kicked the victim only in self-defense. In particular, he argues that the jury lost its way in not crediting his testimony that he was afraid that the victim was getting up to attack him before he kicked the victim in the face. However, we leave credibility determinations to the finder of fact. Because the jury could reasonably return a guilty verdict based on the State's version of the events, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction.
 {¶ 4} Third, Babu raises a series of arguments challenging the sentence handed down by the trial court. He argues that the trial court erred in not expressly considering the mandatory statutory sentencing factors provided in R.C. 2929.22(B)(1). We presume that the trial court followed the appropriate statutory guidelines when the sentence falls within the range provided by the statute. Furthermore, the record supports the conclusion that the trial court followed the factors put forth by R.C. 2929.22(B)(1). Therefore, we do not believe that the trial court's failure to expressly reference these sentencing factors represents reversible error.
 {¶ 5} Babu next argues that the trial court erred in considering a victim-impact letter from the father of a second victim connected to the case despite the fact that the jury acquitted Babu of the charge related to this second victim. However, the trial court specifically stated that it disagreed with the letter's contention that the acquittal was a travesty of justice, and the letter contained information regarding the impact of the crime *Page 3 
on the first victim. Therefore, we do not believe that the trial court abused its discretion in considering the letter at sentencing.
 {¶ 6} Finally, Babu argues that the trial court sentenced him to a term of 90 days in jail based on its erroneous belief that the jury found Babu guilty of recklessly causing serious harm rather than knowingly causing serious harm. In particular, he refers to the trial court's statement that the jury found Babu's conduct to be reckless. However, Babu did not bring this error to the attention of the trial court, and the record supports the conclusion that the trial court was referring to Babu's course of conduct the night of the incident rather than the assault itself.
 {¶ 7} Accordingly, we affirm the judgment.
 I. Facts {¶ 8} Babu and two friends from Miami University, Anant Tamarisa and Adam Osterly, took a road trip to Athens, Ohio, to visit Osterly's friend Andrew Weinfurtner. On the night of April 20, 2006, and into the morning of April 21, 2006, Babu, Tamarisa, Osterly, Weinfurner, and several friends of Weinfurtner's went to a bar named Lucky's on Court Street after visiting other bars and a house party. The group continued drinking and socializing. The bartender at Lucky's testified that he almost threw Babu out of the bar because he was acting aggressively toward other bar patrons, but Tamarisa intervened.
 {¶ 9} As closing time approached, Babu and Tamarisa left the bar ahead of the rest of the group. Tamarisa pointed out that an individual across the street, later identified as Rico Day, had said something negative about Indian people. Babu and Tamarisa are both dark-complexioned and of Indian descent, although Babu has a *Page 4 
darker skin color than Tamarisa. According to Babu, Day used the word "nigger" to refer to Babu and Tamarisa. Babu crossed the street and confronted Day. This confrontation escalated into a fight between Babu and Day in the alley connecting Court Street to North Congress Street. Babu claimed that someone pulled his shirt over his head to prevent him from being able to see and to constrain his arm movement, a technique common among hockey players. Although he was unable to see, he believed that more than one person hit him before someone pulled down his pants. After the fight ended, Day quickly left the area.
 {¶ 10} Dazed from the beating, Babu soon regained awareness of his surroundings and found his pants on the ground. Picking them up, he discovered that his wallet and cell phone were gone, and he saw three people running away down an alley, one of which was Day. According to Babu's testimony at trial, he ran after these individuals and caught up with them at 32 North Congress Street. He testified that he saw Day across the street and moved toward him, but he collided with another person, who was later identified as Paul Guthrie, Day's friend and his former teammate on the hockey team. Immediately afterwards, a member of Babu's group, John Bowers, tackled Guthrie and knocked Babu down as well. Bowers began fighting Guthrie, and the rest of Babu's group encircled them. According to Babu, as he got to his feet, he saw Guthrie rise up on all fours and look him "right in my eye like he was coming in my direction." Babu asserted that he did not know that it was his friends that were surrounding Guthrie, and he explained that he was "panicked" and "terrified." Because he thought he was "about to beat worse than [he] had already been beaten[,]" he kicked Guthrie one time in the face. According to Babu, he was bare-footed at the time. *Page 5 
 {¶ 11} Babu testified that, after the kick, more people rushed into the fray. He stood watching when he was pulled back by his shirt. However, almost immediately he saw everyone disperse as he began hearing the sounds of sirens. According to Babu, he stumbled south on North Congress Street past a few houses until he collapsed. Two passersby came to his assistance and helped him start walking. Babu testified that he did not attempt to run or hide from the police.
 {¶ 12} Guthrie, the victim, testified at trial. He explained that he had watched the fight between Day and Babu because he believed Day was outnumbered by Babu's friends. After the fight, he walked down the alley and turned north on North Congress Street. He soon realized that there was a group of people following him, and he picked up his pace. However, someone tackled him to the ground and hit him in the face. Guthrie fought on the ground with this person, rolled onto his knees, and tried to get up. At this point he looked up and saw Babu kick him in the face. Guthrie explained that he felt his "face kind of crush in" and he felt "[a] popping sensation." He pulled himself into the fetal position and tried to protect his face while the group around him punched and kicked him. However, Guthrie's friend and former hockey teammate, Robbie Farmer, intervened and started pulling people off of Guthrie. The attack stopped when a police officer arrived. Guthrie testified that doctors diagnosed him with a broken nose, a shattered orbital floor underneath his eye, and a cracked orbital socket, as well as injuries to the eye itself. He claimed that Babu's kick caused the injuries around his eye.
 {¶ 13} Tamarisa testified that the person tackling Guthrie at 32 North Congress Street was John Bowers, a friend of Weinfurtner's. He explained that a crowd including *Page 6 
members of Babu's group circled around Guthrie, and he testified that Babu "pushed through the circle at one point and did deliver a kick." Weinfurtner testified that he observed Babu standing near Guthrie's head as Guthrie fought Bowers and that Babu kicked Guthrie in the face "viciously."
 {¶ 14} Farmer also testified at trial. Farmer claimed that after he attempted to work his way through the crowd to reach Guthrie, two of Guthrie's attackers pinned him against a car in order to allow Babu to punch him. Farmer claimed that this punch injured his eye and caused a right orbital blowout fracture, but he did not identify Babu as his assailant until some time later, even though Babu was in the same emergency room.
 {¶ 15} The State presented the testimony of Jessica Keny, who lived at 32 North Congress Street. She testified that she was awakened by yelling outside her window. Looking out, she saw one man surrounded by six other men, who were kicking and punching him. According to Keny, the victim looked like he was getting his head "stepped on" and being kicked in the stomach. She noticed that one of the darker skinned men did not have a shirt on and was doing much of the punching. She called 911, and as sirens approached "the individuals that were fighting all sort of ran off in different directions." The only two left at the scene were the victim and another person who had tried to pull the victim out of the circle. She did not recall the person helping the victim ever getting hit.
 {¶ 16} Officer Roman Brandau of the Athens Police Department testified that he responded to a fight-in-progress call on North Congress Street and that, as he approached, he saw a group of six to seven people scatter and run from the scene of *Page 7 
the accident. According to Officer Brandau, only Guthrie and Farmer remained on the scene. He summoned an EMT squad for the two men. As the squad took them to the emergency room, Farmer saw Babu walking on North Congress Street, still "fairly close" to the scene. Farmer called 911, and Officer Brandau testified that he located Babu at 36 South Congress Street. Officer Brandau summoned an EMT squad for Babu, and the squad's report stated that it picked up Babu on North Congress Street.
 {¶ 17} The State indicted Babu, Weinfurtner, and Tamarisa on two counts of felonious assault, violations of 2903.11(A)(1) and second-degree felonies. In a separate trial, a jury acquitted Weinfurtner of both charges. Before trial, Tamarisa accepted a plea bargain under which he pled no contest to both counts and agreed to cooperate with the prosecution at Babu's trial in exchange for a suspended sentence. The State did not charge Bower. The evidence presented at trial suggested that Bower and Tamarisa caused most of Guthrie's injuries.
 {¶ 18} The jury acquitted Babu of both felonious-assault charges, but it found him guilty of the lesser included offense of misdemeanor assault against Guthrie. At sentencing, the trial court allowed the victim's advocate to read a letter written by Farmer's father, who had sat through the trial. The letter expressed Farmer's disenchantment with the criminal justice system and described the impact of the assault on Guthrie. The trial court sentenced Babu to serve 120 days in jail, pay a $1,000 fine, and pay restitution totaling $6,500 to Medical Mutual, the Ohio Victims of Crime Compensation Fund, and the Athens County Prosecuting Attorney's Furtherance of Justice Fund. The court suspended 30 days of the sentence and $750 of the fine.
 {¶ 19} Babu filed this appeal. *Page 8 
 II. Assignments of Error I. THE TRIAL COURT DEPRIVED THE APPELLANT OF A FAIR TRIAL BY ERRONEOUSLY INSTRUCTING THE JURY THAT THE JURY COULD CONSIDER THE DEFENDANT'S `FLIGHT FROM THE SCENE AS EVIDENCE OF THE DEFENDANT'S GUILT.
 II. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT, AS A FIRST TIME OFFENDER, TO 90 DAYS INCARCERATION WITHOUT REVIEWING AND CONSIDERING THE SENTENCING FACTORS SET FORTH IN O.R.C. § 2929.22.
 A. THE TRIAL COURT ERRED IN CONSIDERING VICTIM IMPACT EVIDENCE CONCERNING THE ALLEGED VICTIM, FARMER, WHEN APPELLANT WAS ACQUITTED OF ALL COUNTS RELATED TO FARMER.
 B. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO 90 DAYS INCARCERATION BELIEVING THAT THE JURY CONVICTED APPELLANT OF `RECKLESSLY' CAUSING SERIOUS HARM WHEN IN FACT THE JURY CONVICTED APPELLANT OF ONLY CAUSING PHYSICAL HARM.
 III. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE ESTABLISHED APPELLANT ACTED IN SELF-DEFENSE.
 III. Jury Instructions {¶ 20} In his first assignment of error, Babu argues that the trial court erred in instructing the jury that, if it found that Babu had fled from the scene, it could consider his flight as evidence of Babu's consciousness of guilt. In particular, Babu argues that the evidence "unequivocally" demonstrates that he did not flee the scene, as he was only two to three houses away from the scene of the attack 45 minutes after it occurred.
 {¶ 21} We have previously set out our standard of review regarding a trial court's jury instructions:
 The law requires a trial court to give the jury all instructions that are relevant and necessary for the jury to properly weigh the evidence and *Page 9 
reach their verdict as the fact finder. State v. Comen (1990), 50 Ohio St.3d 206, 443 N.E.2d 640, paragraph two of the syllabus. The jury instructions `must be based upon the actual issues in the case as presented by the evidence.' State v. Tompkins (Oct. 25, 1996), Clark App. No. 95-CA-0099, 1996 WL 612855, citing State v. Scimemi (June 2, 1995), Clark App. No. 94-CA-58, 1995 WL 329031. Where it is possible that `reasonable minds might reach the conclusion sought by the specific instruction' the court must provide guidance to the jury. See Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 575 N.E.2d 828. While the actual wording of the charge is left to the court's discretion, the need for an instruction presents a question of law. Id.
State v. Dyer, Scioto App. No. 07CA3163, 2008-Ohio-2711, at ¶ 11, quoting State v. Monroe, Scioto App. No. 05CA3042, 2007-Ohio-1492, at ¶ 50. We note that Babu does not challenge the wording of the instruction itself.
 {¶ 22} Babu argues that the trial court could give an instruction on flight only if Babu fled to escape police or engaged in an "affirmative attempt to avoid apprehension." State v. Wesley, Cuyahoga App. No. 80684, 2002-Ohio-4428, at ¶ 19; see, also, State v. Hand,107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶ 167 ("[A]n accused's `"flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."'" (quoting State v.Eaton (1969), 19 Ohio St.2d 145, 160, 249 N.E.2d 897, quoting in turn 2 Wigmore on Evidence (3d Ed. 1979) 111, Section 276)). Because the police found him in the vicinity of the crime, Babu contends that an instruction on flight was erroneous.
 {¶ 23} However, we believe the jury could reasonably conclude that Babu fled from the scene after Guthrie's beating and as the police arrived. Babu himself admitted in his trial testimony that he heard police sirens, saw his friends disperse, and began walking south from the scene. The prosecutor asked Babu during cross-examination: *Page 10 
 Q. Were you aware of the lights, the emergency lights, that were now entering the area from either police or squad?
 A. No I was not.
 Q. You never saw any of those emergency lights?
 A. No. I do remember hearing sirens but I don't remember seeing lights. I proceeded south not even a house distance.
 Q. And that would be right after, what, you heard the sirens?
 A. No. I heard the sirens as I was already leaving.
 Q. Okay. And when you decided to leave did you look about you to see where your acquaintances, your friends, were?
 A. No. I was beaten really badly. I was just trying to get out of this situation okay without anything worse happening to me. That was my only concern at the moment.
Babu's testimony shows that he was aware that police were approaching, but he nonetheless "tried to get out of this situation." He also admitted that he tried to walk away, but then "collapsed" only a few houses down. Babu's testimony indicates that he tried to leave the scene but was physically unable to do so. Thus, the fact that Babu was in the vicinity of the assault is not dispositive, because the jury could reasonably conclude that he attempted to leave it but failed to do so because of his injuries.
 {¶ 24} Furthermore, both Officer Brandau and Keny testified that everyone but Guthrie and Farmer ran from the scene as the officer approached. Although Babu testified that he only made it a few houses away from 32 North Congress Street before he collapsed, he admitted that he continued walking south with the two people who came to his aid. Officer Brandau testified that he found Babu forty-five minutes after the assault at 36 South Congress Street, directly across from Bromley Hall on the Ohio University campus. Although Babu relied on the rescue squad's report showing that it *Page 11 
found Babu on North Congress Street, Officer Brandau indicated that he was positive he found Babu across from Bromley Hall. Moreover, Babu admitted being untruthful with Officer Brandau when first questioned by him, stating that he did not know how he got from Court street to North Congress Street when, in fact, he did.
 {¶ 25} The trial court did not err in instructing the jury that, if it found that Babu fled from police, it could consider Babu's flight as evidence of Babu's consciousness of guilt. A reasonable juror could find that Babu left the scene as officers approached in order to avoid an encounter with police. Accordingly, we overrule his first assignment of error.
 IV. The Manifest Weight of the Evidence {¶ 26} In his third assignment of error, Babu argues that the jury's verdict finding him guilty of misdemeanor assault is against the manifest weight of the evidence. In particular, although he admitted kicking Guthrie, Babu contends that the jury lost its way in rejecting his claim of self-defense.
 {¶ 27} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Elmore, 111 Ohio St.3d 515,2006-Ohio-6207, 857 N.E.2d 547, at ¶ 44; State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably *Page 12 
conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Johnson (1991), 58 Ohio St.3d 40, 41,567 N.E.2d 266; State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus. Even though we sit as the thirteenth juror, we must remember the weight to be given evidence, and the credibility to be afforded testimony, are issues normally to be determined by the trier of fact. State v. Dye (1998), 82 Ohio St.3d 323,329, 1998-Ohio-234, 695 N.E.2d 763; State v. Frazier (1995),73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, only where the jury clearly loses its way and creates a manifest miscarriage of justice will we substitute our judgment for theirs.
 {¶ 28} Self-defense is an affirmative defense, and the burden of going forward with evidence to prove self-defense rests entirely on the accused. R.C. 2901.05(A); State v. Palmer, 80 Ohio St.3d 543, 563,1997-Ohio-312, 687 N.E.2d 685, 703; State v. Martin (1986),21 Ohio St.3d 91, 488 N.E.2d 166, at the syllabus, aff'd Martin v. Ohio (1987),480 U.S. 228, 107 S. Ct. 1098, 94 L.Ed.2d 267. To prove self-defense, the evidence must show that: (1) the accused was not at fault in creating the situation that gave rise to the affray; (2) the accused has a bona fide belief that he was in imminent danger of harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or to avoid the danger. State v. Williford (1990), 49 Ohio St.3d 247, 249,551 N.E.2d 1279; State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, at paragraph two of the syllabus. *Page 13 
 {¶ 29} Babu testified that, at the beginning of the attack on Guthrie, he did not know who it was that had knocked Guthrie and him down and that he did not know that the people surrounding Guthrie were his own friends, not Guthrie's friends. Babu explained that, when he saw Guthrie begin to get up on all fours, "[he] thought [he] was about to be beat worse than [he] had already been beaten." However, Babu testified that all that Guthrie did was get up on all fours and "look [Babu] in the eye." Babu did not testify that Guthrie actually came toward him.
 {¶ 30} Other testimony undermined Babu's claim of self-defense. Tamarisa testified that when he came to 32 North Congress Street, he found two people fighting on the ground and a circle of onlookers. Tamarisa explained that Babu "pushed through the circle at one point and did deliver a kick." Tamarisa's testimony suggests that Babu was in no imminent danger, as his passed through the circle to reach Guthrie while Guthrie fought another individual.[1] Guthrie testified that he had been trying to escape the first assailant, had gotten onto all fours, and looked up to see Babu cocking his foot to kick him. Guthrie explained that all he had time to do was turn his face away before the blow landed. Weinfurner testified that Babu had stood close by as Bowers fought Guthrie on the ground and that Babu kicked Guthrie "viciously" as Guthrie attempted to get up.
 {¶ 31} Essentially, Babu argues that the jury lost its way in discrediting his testimony that he reasonably believed that he was in imminent danger of bodily harm. *Page 14 
However, as we explained in State v. Murphy, Ross. App. 07CA2953,2008-Ohio-1744, at ¶ 31,
 [i]t is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently.
We leave the issues of weight and credibility of the evidence to the fact finder, as long as there is a rational basis in the record for their decision. Murphy at ¶ 31; State v. Lewis, Lawrence App. No. 06CA20, 2007-Ohio-2250, at ¶ 12. We defer to the fact finder on these issues because the fact finder "`is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony.'" Id., quoting Seasons Coal Co., 10 Ohio St.3d at 80.
 {¶ 32} In order for the jury to conclude that Babu did not kick Guthrie in self-defense, it had to assess Babu's credibility and reject his testimony that he believed he was in imminent danger. Having heard this testimony and having observed the demeanor of Babu and other witnesses, the jury could choose to believe all, part, or none of the testimony presented by any of these witnesses. State v. Parish, Washington App. Nos. 05CA14 05CA15, 2005-Ohio-7109, at ¶ 15. The jury chose to disbelieve Babu's testimony regarding his decision to kick Guthrie, and we will not substitute our judgment for that of the jury under these circumstances. The evidence reasonably supports the conclusion that Babu did not believe that he was in imminent danger at the time of the attack on Guthrie. Babu sought out a confrontation with the individual or individuals who assaulted him. Several witnesses testified that Babu was *Page 15 
standing among his friends watching Bower and Guthrie fight before kicking Guthrie and that, therefore, he was in no real danger from Guthrie. Finally, Babu admitted that all Guthrie did was look at him; he did not testify that it would have been impossible for him to retreat.
 {¶ 33} Accordingly, the jury's verdict is not against the manifest weight of the evidence and we overrule his third assignment of error.
 V. Sentencing {¶ 34} In his second assignment of error, Babu raises multiple arguments challenging the sentence handed down by the trial court. We address each in turn. A. Consideration of the R.C. 2929.22(B)(1) Sentencing Factors
 {¶ 35} First, Babu argues that the trial court erred in handing down his sentence without expressly considering the mandatory statutory factors found in R.C. 2929.22(B)(1), which provides:
 In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors:
 (a) The nature and circumstances of the offense or offenses;
 (b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;
 (c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;
 (d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; *Page 16 
 (e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B) (1)(b) and (c) of this section.
The trial court did not expressly reference these factors in either the sentencing hearing or in its sentencing entry.
 {¶ 36} Generally, trial courts enjoy broad discretion when imposing sentences in misdemeanor cases, and we will not vacate a sentence unless the court abused its discretion. State v. Fitzpatrick, Lawrence App. No 07CA18, 2007-Ohio-7170, at ¶ 9; State v. Polick (1995),101 Ohio App.3d 428, 430-31, 655 N.E.2d 820. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty.Sheriff's Dept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498,506, 589 N.E.2d 24. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. State v. Hutchinson, Athens App. No. 03CA31,2004-Ohio-4125, at ¶ 13, citing In re Jane Doe I (1991),57 Ohio St.3d 135, 138, 566 N.E.2d 1181, and Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Nonetheless, the trial court lacks the discretion to disregard the statutory factors provided in R.C. 2929.22(B)(1), even though it has discretion in the ultimate sentence handed down after consideration of those factors. See State v.Nayar, Lawrence App. No. 07CA6, 2007-Ohio-6092, at ¶¶ 32-33 (explaining that courts have no discretion to disregard mandatory statutory factors in felony sentencing even where they have discretion in the ultimate choice or result on the merits); State v. Strohm, 153 Ohio App.3d 1,2003-Ohio-1202, 790 N.E.2d 796, at ¶ 8 ("Although R.C. 2929.22 does not set forth requirements for imposing maximum or consecutive sentences, it does set *Page 17 
forth factors that must be considered when determining whether a jail term is appropriate. The failure to consider these factors is an abuse of discretion."); State v. Polick (1995), 101 Ohio App.3d 428, 431,655 N.E.2d 820 ("Although none of the statutory criteria absolutely mandate a certain result and the court may consider other relevant matter in sentencing a defendant on a misdemeanor, the court must consider the factors set forth in R.C. 2929.22.").
 {¶ 37} Here, the trial court sentenced Babu to 120 days in jail and suspended 30 days of that sentence. Under R.C. 2929.24(A)(1), the trial court could impose a sentence of not more than 180 days for a first-degree misdemeanor. As we have previously explained, "when a jail sentence falls within the statutory limit, as it does here, reviewing courts presume that the trial court followed the appropriate statutory guidelines." Fitzpatrick at ¶ 10, citing State v. Wagner (1992),80 Ohio App.3d 88, 95-96, 608 N.E.2d 852, and State v. Crable, Belmont App. No. 04BE17, 2004-Ohio-6812, at ¶ 24; see, also, City of Toledo v.Kothe, Lucas App. No. L-07-1383, 2008-Ohio-2880, at ¶ 19 ("In cases where the record is silent on this issue, a presumption is raised that the trial court properly considered the factors listed in R.C. 2929.22."); State v. Nelson, 172 Ohio App.3d 419, 2007-Ohio-3459,875 N.E.2d 137, at ¶ 14 ("When determining a misdemeanor sentence, R.C. 2929.22 does not mandate that the record reveal the trial court's consideration of the statutory sentencing factors. Rather, appellate courts will presume that the trial court considered the factors set forth in R.C. 2929.22 when the sentence is within the statutory limits, absent an affirmative showing to the contrary."); cf. State v.Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus ("A silent record raises the presumption that a trial court considered the factors *Page 18 
contained in R.C. 2929.12."). The record does not affirmatively show that the trial court failed to consider the factors found R.C. 2929.22(B)(1).
 {¶ 38} Moreover, the record suggests that the trial court considered the proper statutory factors. The trial court explained that it considered letters drafted on Babu's behalf, Babu's statement that his conduct on the night of the altercations did not accurately reflect his character, and counsel's arguments. In particular, counsel argued that Bowers had never been arrested or charged despite the testimony that he may have been responsible for many of Guthrie's injuries. Counsel also argued that Tamarisa had received a plea deal with no jail time despite testimony that he was also actively involved in attacking Guthrie, fled from police, and lied to police. Counsel emphasized that "[t]he prosecution made choices in this case with other co-defendants I think were wrong, and didn't charge somebody that should have been charged." Babu's attorney asked the court not to take the night of the incident "out of context" of Babu's life, noted that Babu "is a good kid," and reminded the court that it was the racial slur that provoked the incident Babu's attorney challenged the State's claim that Guthrie had been emotionally shattered by the attack, arguing that Guthrie has continued playing hockey, "partying[,] and drinking." The trial court recognized at the hearing that Babu was not responsible for all of the harm inflicted upon Guthrie, and it stated that it had consulted the statutes in determining the appropriate sentence.
 {¶ 39} Although Babu argues that the sentence is unfair given the fact that others involved in the attack had not been properly punished while he was given a jail sentence, [2] Babu pursued his attacker or attackers with the apparent intention of *Page 19 
continuing the altercation. Babu stood around the head of the victim as others attacked him and kicked him in the face when the victim attempted to rise. The State presented evidence that the victim had been permanently disfigured to some degree and that he had suffered continuing psychological harm.
 {¶ 40} We cannot conclude that the trial court ignored the relevant sentencing factors or abused its discretion in handing down its sentence. Accordingly, we overrule the first part of his second assignment of error.
 B. The Letter from Farmer's Father {¶ 41} Babu argues that his sentence is "tainted by improper non-statutory considerations" because the trial court considered victim-impact testimony in the form of a letter from Farmer's father. The jury acquitted Babu of the felonious assault charge related to Farmer. Thus, Babu argues that Farmer was not a victim and that the consideration of the letter was therefore improper.
 {¶ 42} The only authority cited by Babu for this proposition is that "O.R.C. § 2929.22(D)(1) provides that a sentencing court shall consider relevant statements from the victim." However, the language of R.C. 2929.22(D)(1) does not limit the judge to considering relevant statements from "the victim, the defendant, the defense attorney, or the prosecuting authority * * *." Rather, it provides that if there are such statements from those parties, the trial court must consider them.
 {¶ 43} Nonetheless, we recognize that "a trial court abuses its discretion in sentencing a defendant, even when the sentence imposed is within the statutory guidelines, if the trial court has considered evidence concerning the acquitted charge." *Page 20 State v. Patterson (1996) 110 Ohio App.3d 264, 271, 673 N.E.2d 1001; see, also, State v. Daniel, Franklin App. Nos. 05AP-564 05AP-683,2006-Ohio-4627, at ¶ 32 ("`[I]t constitutes an abuse of discretion for a trial court to impose a more severe sentence for a lesser charge of which the defendant was convicted because of the trial court's belief that the jury was mistaken in finding the defendant not guilty of a more serious offense.'" (quoting Columbus v. Jones (1987), 39 Ohio App.3d 87,90, 529 N.E.2d 947)).
 {¶ 44} Nothing in the record indicates that the trial court took the assault on Farmer into account in sentencing Babu. When the prosecution offered the letter from Farmer's father as the statement of "an individual who was here, who was part of the process, knows the victim," the trial court explained that, although Farmer's father could comment on the punishment to be handed down, no restitution could be awarded to Farmer. Further, the trial court took offense to the letter's characterization of the jury's verdict acquitting Babu of the assault against Farmer as a "travesty of justice." The court explained:
 I understand that he may be hurt and he may grieve about this. But a lot of what he said I don't think hit the mark here. I'm surprised that a lawyer would take that position. What his son did was, if you believe what his son testified to, was wonderful and he should be credited for that. But to call what happened a travesty of justice is to insult the jury. And I can't insult the jury and he shouldn't insult the jury as an officer of the court.
 {¶ 45} Thus, the court made clear that it respected the jury's verdict of acquittal and that the impact on Farmer could not be considered in imposing a sentence for the offense involving Guthrie. Much of the letter was relevant in that it provided first-hand observations of the impact of the attack on Guthrie. Furthermore, to the extent that Babu complains that the letter was "highly inflammatory," a trial judge is "presumed to have considered only the relevant, material, and competent evidence." State v. Bays, *Page 21 87 Ohio St.3d 15, 28, 1999-Ohio-216, 716 N.E.2d 1126. The trial judge's comments above reflect the accuracy of this presumption. For this reason, we can reasonably conclude that the judge would be unaffected by any inflammatory material. Likewise, the record reflects that the trial judge did not improperly consider the acquittal concerning Farmer. Accordingly, we overrule this part of Babu's second assignment of error.
 C. The Trial Court's Characterization of Babu's Conduct as Reckless {¶ 46} Finally, Babu argues that the trial court erroneously believed that the jury had found Babu guilty of "recklessly causing serious physical harm," a violation of R.C. 2903.13(B). The trial court instructed the jury that a person commits the lesser-included offense of misdemeanor assault by knowingly causing physical harm. The sentencing entry shows that the jury found Babu guilty of violating R.C. 2903.13(A), which prohibits knowingly causing physical harm. Violations of R.C. 2903.13(A) and R.C. 2903.13(B) are both first-degree misdemeanors.
 {¶ 47} In handing down its sentence, the trial court explained: "The jury reached a conclusion that something bad happened her[e]. And the conduct that they attributed to Mr. Babu was reckless conduct, not intentional conduct, but reckless conduct. He should bear consequences for the harm that was caused by his reckless conduct." Babu raised no objection to this statement in the trial court. Thus, he forfeited any issue in this regard. State v. Payne, 114 Ohio St.3d, 2007-Ohio-4642, ¶¶ 21-23. Nonetheless, Babu emphasizes that the trial court erroneously believed that the jury had found that Babu had inflicted serious physical harm on Guthrie. However, while emphasizing the greater severity of harm required for a conviction under R.C. 2903.13(B), he disregards *Page 22 
the lesser culpable mental state required for such a conviction and the greater culpability required for a conviction under R.C. 2903.13(A). In any case, Babu's attorney argued at the sentencing hearing that the jury had found that Babu had not inflicted the most serious injuries on Guthrie but had found that he had inflicted only physical harm on Guthrie. The court stated that it considered the statements of trial counsel in determining a sentence, and it recognized that, "as blameful as [Babu] is, he did not cause all of the harm here." Furthermore, it appears that the trial court was referring to Babu's whole course of conduct on the night and morning of the incident as being reckless: Babu was intoxicated; he voluntarily fought with another individual; despite his injuries, he pursued the individuals associated with the fight in order to continue the altercation, and he participated in a group assault upon an individual that he could not say had attacked him. Finally, the trial court's entry shows that the court sentenced Babu for a violation of R.C. 2903.12(A), not R.C. 2903.12(B). See State v.Jenkins, 174 Ohio App.3d 374, 2007-Ohio-7180, 882 N.E.2d 57, at ¶ 12 ("It is well settled that a court speaks only through its journal, and we will not ordinarily consider matters that are not carried over into the court's judgment entry.").
 {¶ 48} For these reasons, we do not believe that the trial court was confused regarding the offense that Babu had committed, and we overrule this part of his second assignment of error. Accordingly, we affirm his conviction and sentence.
 JUDGMENT AFFIRMED. *Page 23 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. and McFarland, J.: Concur in Judgment and Opinion.
[1] The defense brought out evidence that Tamarisa was actively involved in Guthrie's beating, that he had fled from the scene on the arrival of police, that he had hidden from police, that he lied to police, that he was a party to the civil suit brought by Guthrie and Farmer, and that he had obtained a plea deal in exchange for his testimony.
[2] Babu has not argued that the State engaged in selective prosecution in violation of his due process rights. SeeHutchinson at ¶ 28 ("The State denies equal protection of the laws when it makes `"unjust and illegal discriminations between persons in similar circumstances, material to their rights * * *."'" (quoting State v.Flynt (1980), 63 Ohio St.2d 132, 134, 407 N.E.2d 15, quoting in turnYick Wo v. Hopkins (1886), 118 U.S. 356, 373-74, 6 S. Ct. 1064,30 L.Ed. 220)). *Page 1