[Cite as *State v. Sweeney*, 2024-Ohio-3425.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-58 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0813 |
| | : | |
| TIMOTHY SWEENEY | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 6, 2024

. . . . . . . . . . .

KATE L. BOWLING, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Timothy Sweeney appeals from his conviction in the Clark County Court of Common Pleas after a jury found him guilty of aggravated possession of drugs in violation of R.C. 2925.11(A). In support of his appeal, Sweeney contends that the trial court should have dismissed his case on speedy-trial grounds and due to discovery

violations by the State. Sweeney also contends that his conviction should be vacated because it was not supported by sufficient evidence. For the reasons outlined below, we disagree with Sweeney's arguments and will affirm the judgment of the trial court.

**Overview of Facts and Course of Proceedings**

{¶ 2} On March 15, 2022, a Clark County grand jury returned an indictment charging Sweeney with one third-degree-felony count of possession of drugs in Clark C.P. No. 22-CR-238. The charge stemmed from allegations that Sweeney was in possession of methamphetamine on August 13, 2021. Sweeney was arrested the day he was indicted and released on bond a week later. The trial court scheduled Sweeney's case for a jury trial to commence on July 19, 2022. The trial date was continued twice by the trial court. The State thereafter dismissed the case without prejudice on November 4, 2022. Three days before the dismissal, Sweeney filed a motion to compel certain photographs that the State had not turned over in discovery. However, given the dismissal of the case, the trial court never ruled on the motion.

{¶ 3} On November 7, 2022, Sweeney was reindicted in Clark C.P. No. 22-CR-813 for one count of aggravated possession of drugs. The reindictment was based on the same conduct for which Sweeney was charged in the previously-dismissed case. After Sweeney was personally served with the summons on indictment, the trial court set the case for a jury trial to commence on December 13, 2022. On November 16, 2022, Sweeney filed another motion to compel the photographs that had not been turned over in discovery. The trial court granted the motion without a hearing on November 18, 2022.

{¶ 4} Sweeney's trial did not go forward as scheduled because the trial court continued Sweeney's trial twice due to its congested docket, and once due to the State's failure to turn over the photographs that were the subject of Sweeney's motion to compel. On July 12, 2023, Sweeney moved to dismiss the case based on the State's failure to turn over the photographs. Sweeney also moved to dismiss the case based on the State's alleged failure to provide the defense with a body camera video.

{¶ 5} In response, the State conceded that it had inadvertently failed to turn over the photographs in question, but it maintained that the body camera video had been turned over to the defense during the first round of discovery in Case No. 22-CR-238. After holding a discovery review hearing, the trial court found that the State's failure to turn over the discovery in question had been negligent but not the result of any bad faith. As a sanction, the trial court continued the trial in order to give the defense an opportunity to review the photographs and body camera video. The trial court then rescheduled Sweeney's trial for September 19, 2023.

{¶ 6} The day before trial, Sweeney filed a motion to dismiss his case on grounds that his statutory and constitutional rights to a speedy trial had been violated. When the parties appeared for trial the following day, Sweeney agreed to another trial continuance so that the trial court could thoroughly review his speedy-trial claim and issue a written decision. After reviewing the matter, on October 12, 2023, the trial court overruled Sweeney's motion to dismiss, as the court found no speedy-trial violation. Sweeney's jury trial thereafter went forward on October 26, 2023.

{¶ 7} At trial, the State presented testimony from Detective Nicholas Moody of the

Clark County Sheriff's Office. Det. Moody's testimony established that he was on duty as a road patrol officer on the day in question. Det. Moody was patrolling an area known as Medway in Bethel Township, Clark County, Ohio, with an officer in training, Deputy Harris. While on patrol, Det. Moody observed Sweeney walking down the driveway of Sweeney's residence. Det. Moody was familiar with Sweeney and knew that Sweeney had warrants out for his arrest. Accordingly, Det. Moody told Dep. Harris to stop their cruiser so that they could place Sweeney in custody.

{¶ 8} Det. Moody recalled that Sweeney had noticed their cruiser when they drove up to his residence and that Sweeney had briefly made eye contact with him. As Dep. Harris was parking the cruiser, Det. Moody observed Sweeney crouch down for a couple of seconds next to a maroon Cadillac that was parked in Sweeney's driveway. Sweeney then stood back up and walked toward the officers.

{¶ 9} While Dep. Harris was handcuffing Sweeney, Det. Moody went over to the area by the maroon Cadillac where he had seen Sweeney crouch down. When Det. Moody reached that area, he observed a plastic bag containing suspected narcotics, a black cellphone, and a black digital scale lying on the ground underneath the rocker panel of the Cadillac. Det. Moody did not have to crouch down to see these items, as they were observable from the position where he was standing.

{¶ 10} After observing the items underneath the Cadillac, Det. Moody retrieved his digital camera and took photographs of the items and the area where they were found. Det. Moody did not move the items before taking the photographs. Det. Moody's photographs were admitted into evidence as State's Exhibits 9 through 13. The

photographs showed the plastic bag of suspected narcotics, the cellphone, and the scale lying on the ground partially underneath the Cadillac.   *See* State's Exhibit 10.   A close-up photograph of those items showed that there was an unidentified object lying next to the plastic bag of suspected narcotics and a second plastic bag of suspected narcotics located a little further underneath the Cadillac.   *See* State's Exhibit 11.

{¶ 11} Once all the items had been photographed, Det. Moody collected the items and placed them into evidence.   Upon collecting the items, Det. Moody observed that the two plastic bags contained a white crystalline substance.   The photographs admitted into evidence showed that one of the plastic bags contained two smaller plastic bags of the white crystalline substance.   *See* State's Ex. 12.   Accordingly, there were a total of three plastic bags containing the substance in question.   Det. Moody sent the substance in the plastic bags to the Ohio Bureau of Criminal Investigation for testing.   The results showed that two of the plastic bags contained a total of 4.82 grams of methamphetamine.   *See* State's Exhibit 1.

{¶ 12} Although Sweeney told Det. Moody that none of the items underneath the Cadillac belonged to him, the State presented a body camera video in which Sweeney asked the officers: "[W]hen can I get the phone?"   *See* State's Exhibit 8.   Sweeney's live-in girlfriend, Angela Keller, who testified as a defense witness, testified that the cellphone found next to the drugs "possibly" belonged to Sweeney or herself.   Trial Tr. p. 208.   After watching the body camera video, Keller confirmed that Sweeney had asked the officers: "[W]hen can I get the phone?"   Trial Tr. 226.

{¶ 13} During her direct examination, Keller testified that just prior to Sweeney's

encounter with the officers, a man she did not know showed up at their residence and tried to sell a baggy of drugs to Sweeney. Keller testified that she became angry when she saw the drugs and told Sweeney to get the man off her property. Keller claimed that, shortly after the man left, Sweeney realized the man had stolen his wallet. Keller testified that when she and Sweeney went outside to see where the man had gone, they observed Det. Moody and Dep. Harris approaching in their cruiser. According to Keller, Sweeney ducked down when he saw the officers because he had a warrant out for his arrest. Keller claimed that Sweeney did not have anything in his hands and did not throw anything on the ground when he ducked down. On cross-examination, Keller changed her story and testified that the man with the drugs also stole Sweeney's cellphone. She also admitted that she had never mentioned that Sweeney's cellphone or wallet had been stolen when she interacted with the officers.

{¶ 14} After hearing all of the testimony and evidence presented at trial, the jury deliberated and found Sweeney guilty of aggravated possession of drugs. At sentencing, the trial court imposed a 36-month prison term, ordered Sweeney to pay a $10,000 fine, and suspended Sweeney's driver's license for five years. Sweeney now appeals from his conviction, raising three assignments of error for review. For purposes of clarity, we will review Sweeney's assignments of error out of order.

## Second Assignment of Error

{¶ 15} Under his second assignment of error, Sweeney contends that his statutory and constitutional rights to a speedy-trial were violated, and that the trial court erred by

failing to dismiss his case on those grounds.   We disagree.

*The Record*

**{¶ 16}** The speedy-trial issue raised by Sweeney requires this court not only to consider the record of the case being appealed from, i.e., Case No. 22-CR-813, but also the record of Case No. 22-CR-238, i.e., the dismissed case in which Sweeney was originally indicted for the conduct in question.   *See State v. Broughton*, 62 Ohio St.3d 253, 260-261 (1991) (explaining that when an indictment is dismissed and the defendant is thereafter reindicted for the same underlying facts as alleged in the original indictment, the speedy-trial time that elapsed under the original indictment "should be tacked on to the time period commencing with the second indictment").   However, the proceedings and filings in Case No. 22-CR-238 are not part of the record on appeal.   The only information in the record pertaining to Case No. 22-CR- 238 is its online docket, as Sweeney attached a printout of the online docket to his speedy-trial motion to dismiss. But "it is a common practice for appellate courts to take judicial notice of publicly accessible online court dockets."   *State v. Estridge*, 2022-Ohio-208, fn. 1 (2d Dist.), citing *State v. McClurg*, 2020-Ohio-1144, ¶ 8 (2d Dist.).   Although our review of the events in Case No. 22-CR-238 is limited to the information in the online docket, we find that information is sufficient to dispose of the speedy-trial issues raised herein and that supplementing the record is unnecessary.

*Standard of Review*

{¶ 17} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." (Citation omitted.) *State v. Long*, 2020-Ohio-5363, ¶ 15; *accord State v. Knott*, 2024-Ohio-2289, ¶ 15 (2d Dist.). "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *State v. Clay*, 2016-Ohio-424, ¶ 5 (2d Dist.), quoting *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.).

{¶ 18} With one exception, we find that the trial court's factual findings in this case were supported by competent, credible evidence in the record. The one exception pertained to Sweeney's date of arrest. The trial court found that Sweeney had been arrested on March 18, 2022, but the record indicates that the sheriff arrested Sweeney on March 15, 2022, and then filed documentation endorsing that fact on March 18. Other than Sweeney's date of arrest, the facts applied herein have been taken from the trial court's factual findings or have otherwise been obtained from the available record.

*Statutory and Constitutional Speedy-Trial Rights*

{¶ 19} " 'The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state. . . .This same right is assured an accused party by Section 10, Article 1 of the Ohio Constitution.' " (Footnote omitted.) *State v. O'Brien*, 34 Ohio St.3d 7, 8 (1987), quoting *State v. Ladd*, 56 Ohio St.2d 197, 200 (1978), citing *Klopfer v. North Carolina*, 386 U.S. 213 (1967). The

constitutional right to a speedy trial is also statutorily enforced in Ohio by the provisions of R.C. 2945.71 et seq. *State v. Adams*, 43 Ohio St.3d 67, 68 (1989). "Thus, for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." (Emphasis deleted.) *O'Brien* at 9.

{¶ 20} "[A]lthough the statutory and constitutional speedy trial provisions are coextensive, the constitutional guarantees may be found to be broader than speedy trial statutes in some circumstances." *Id.* The Supreme Court of Ohio has recognized that " 'there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is our duty to see that an accused receives the protection of the higher authority[.]' " *Id.*, quoting *Ladd* at 201. " '[B]ecause constitutional speedy trial guarantees may be found to be broader than speedy trial statutes,' a constitutional right to a speedy trial must be analyzed separately from a statutory speedy trial right." *State v. Frazier*, 2023-Ohio-4222, ¶ 6 (9th Dist.), quoting *State v. Williams*, 1994 WL 135309, *2 (9th Dist. Apr. 20, 1994).

*Relevant Statutory Speedy-Trial Law*

{¶ 21} Pursuant to R.C. 2945.71, a person charged with a felony offense "shall be brought to trial within [270] days after the person's arrest." R.C. 2945.71(C)(2). "Each day the accused is held in jail in lieu of bail is counted as three days." *State v. Harris*, 2023-Ohio-648, ¶ 12 (2d Dist.), citing R.C. 2945.71(E). "A defendant establishes a prima facie speedy trial violation when his motion [to dismiss] reveals that a trial did not occur

within the time period prescribed by R.C. 2945.71." *State v. Hill*, 2020-Ohio-2958, ¶ 6 (2d Dist.), citing *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). "If a defendant 'establishes a prima facie case of a violation of his right to a speedy trial, the burden then shifts to the State' to demonstrate either that the statutory limit was not exceeded, or that the State's time to bring the defendant to trial was properly extended." *State v. Wagner*, 2021-Ohio-1671, ¶ 12 (2d Dist.), quoting *State v. Nichols*, 2005-Ohio-1771, ¶ 11 (5th Dist.), citing *Butcher* at 30-31. Speedy-trial time may be extended/tolled for a number of circumstances listed under R.C. 2945.72(A) through (J).

{¶ 22} Pursuant to R.C. 2945.72(E), speedy-trial time is tolled for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). For example, "[a] motion to compel discovery tolls the speedy-trial period to allow a reasonable opportunity for the state to respond to it and for the court to rule on it." *State v. Hucks*, 2016-Ohio-323, ¶ 27 (4th Dist.), citing *State v. Staffin*, 2008-Ohio-338, ¶ 15 (4th Dist.). However, where such a motion is "necessitated by the State's failure to fully comply with Defendant's earlier discovery request, any delay caused by the motion is not chargeable to Defendant and does not toll the speedy trial time." (Citation omitted.) *State v. Knight*, 2005-Ohio-3179, ¶ 19 (2d Dist.). Indeed, "[r]eviewing courts must focus on the underlying source of the delay." *State v. Martin*, 2019-Ohio-2010, ¶ 25, citing *State v. Bauer*, 61 Ohio St.2d 83, 84 (1980).

{¶ 23} Pursuant to R.C. 2945.72(H), speedy-trial time is also tolled for "[t]he period of any continuance granted on the accused's own motion, and the period of any

reasonable continuance granted other than upon the accused's own motion." Therefore, "[c]ontinuances that a defendant requests toll the clock under R.C. 2945.75(H)[.]" *State v. Lewis*, 2021-Ohio-1895, ¶ 35 (2d Dist.). "Where a continuance is not based on the defendant's request, it will extend the speedy trial time only if the continuance is reasonable and necessary under the circumstances of the case." *State v. Willis*, 2016-Ohio-616, ¶ 17 (6th Dist.), citing *State v. Saffell*, 35 Ohio St.3d 90, 91 (1988). In other words, continuances that are granted at the State's request or that are ordered sua sponte by the trial court must be reasonable to toll speedy-trial time. *State v. King*, 70 Ohio St.3d 158, 162 (1994); *Knight* at ¶ 30; *State v. Stamps*, 127 Ohio App.3d 219, 224 (1st Dist. 1998). "If they are not reasonable, both types of continuances must be charged against the state for speedy-trial purposes." *Stamps* at 224.

{¶ 24} " 'Reasonableness is strictly construed against the State.' " *State v. Gavin*, 2011-Ohio-4665, ¶ 34 (2d Dist.), quoting *Knight* at ¶ 30, citing *State v. Singer*, 50 Ohio St.2d 103, 109 (1977). The question of whether a continuance is reasonable "depends on the peculiar facts and circumstances of a particular case" and therefore must be reviewed on a case-by-case basis. *Saffell* at 91; *State v. Najjar-Banks*, 2019-Ohio-3337, ¶ 30 (5th Dist.). For the continuance to toll speedy trial time, "[t]he record must reflect that the continuance was 'reasonable in both purpose and length.' " *State v. Martin*, 56 Ohio St.2d 289, 293 (1978), quoting *State v. Lee*, 48 Ohio St.2d 208, 210 (1976).

{¶ 25} Furthermore, " '[w]hen sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for

bringing a defendant to trial.' " *State v. Ramey*, 2012-Ohio-2904, ¶ 32, quoting *State v. Mincy*, 2 Ohio St.3d 6 (1982), syllabus; *State v. Belville*, 2022-Ohio-3879, ¶ 30, citing *King* at 162-163. " 'The journalization of reasons is necessary to permit the appellate court to determine whether, on the accused's claim that his statutory speedy trial rights were violated, the period of delay resulting from the sua sponte continuance was nevertheless "reasonable." ' " *State v. Lovett*, 2022-Ohio-1693, ¶ 22 (2d Dist.), quoting *State v. Ramey*, 2012-Ohio-6187, ¶ 13 (2d Dist.), quoting R.C. 2945.72(H). However, "an appellate court may affirm a conviction challenged on speedy-trial grounds even if the trial court did not expressly enumerate any reasons justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record." *Ramey*, 2012-Ohio-2904, at ¶ 33, citing *State v. McRae*, 55 Ohio St.2d 149, 153 (1978). "The record of the trial court must in some manner affirmatively demonstrate that a sua sponte continuance by the court was reasonable in light of its necessity or purpose." *Lee* at 209; *McRae* at 153 (the existing record must affirmatively demonstrate the reasonableness of the delay).

*Statutory Speedy-Trial Analysis*

{¶ 26} In this case, Sweeny's speedy-trial time began running on March 16, 2022, i.e., the day after Sweeney was arrested in Case No. 22-CR-238. Sweeney was in jail for six days until he was released on bond on March 22, 2022. Therefore, pursuant to the triple-count provision under R.C. 2945.71(E), 18 days of speedy-trial time elapsed between March 16th and March 22nd.

{¶ 27} The trial court scheduled Sweeney's case for a jury trial to commence on July 19, 2022. There was no tolling event between March 22, 2022, and July 19, 2022. Therefore, 119 days of speedy-trial time elapsed during that period, making the total speedy-trial calculation 137 days (18 +119 = 137).

{¶ 28} The trial did not go forward on July 19 as scheduled because the trial court ordered a sua sponte trial continuance. The online docket from Case No. 22-CR-238 indicates that the trial court issued a journal entry on July 26, 2022, stating that: "The trial is rescheduled for August 17, 2022 at 9:00 a.m. As per set forth." Although the specific reason for the continuance is not apparent from the online docket, the transcript of the hearing on Sweeney's speedy trial motion affirmatively demonstrates that the trial court ordered the continuance due to Sweeney's testing positive for COVID-19. *See* Hearing Tr. (Sept. 19, 2023), p. 7. Under that circumstance, we find the sua sponte trial continuance was reasonable in light of its necessity and purpose, as the continuance gave Sweeney time to recuperate and prevented him from transmitting COVID-19 to others in the courtroom. In addition, we find that the length of the continuance, which was less than a month, was reasonable as well. Accordingly, pursuant to R.C. 2945.72(H), Sweeney's speedy-trial time was tolled by the sua sponte continuance, meaning that zero days of speedy-trial time elapsed between July 19th and August 17th.

{¶ 29} The trial did not go forward on August 17 because the trial court ordered another sua sponte trial continuance. The online docket from Case No. 22-CR-238 indicates that the trial court issued a journal entry on August 18, 2022, stating: "The August 17, 2022 jury trial is continued on the Court's motion because it is presiding over

an OVI jury trial in *State v. Michael Wood*, case 22-CR-0488." The trial court then rescheduled Sweeney's trial to take place two and a half months later on November 2, 2022.

**{¶ 30}** It is well established that scheduling and docketing conflicts are reasonable grounds for extending an accused's trial date beyond the speedy-trial time limit. *State v. Walker*, 2013-Ohio-3522, ¶ 28 (8th Dist.), citing *Lee*, 48 Ohio St.2d 208 and *Saffell*, 35 Ohio St.3d at 92; a*ccord State v. Stoddard*, 2020-Ohio-893, ¶ 14 (9th Dist.); *State v. Davis*, 2018-Ohio-4368, ¶ 91 (3d Dist.), citing *State v. Glass*, 2004-Ohio-4402, ¶ 11 (3d Dist.); *State v. Monroe*, 2007-Ohio-1492, ¶ 32 (4th Dist.). Therefore "a continuance issued by the trial court due to involvement in another criminal trial tolls the running of the speedy trial time." *State v. Christian*, 2014-Ohio-2590, ¶ 19 (7th Dist.), citing *State v. McCall*, 2003-Ohio-1603, ¶ 23 (7th Dist.).

**{¶ 31}** Although the record does not specifically indicate why the continuance ended up being two and a half months long, it is clear that when rescheduling trial dates, a trial court is not only constrained by its own docket and schedule, but also by the schedules of the prosecutor and defense counsel who are trying the case. Other courts have found trial continuances of similar lengths to be reasonable. *See, e.g., State v. Cottrell*, 2012-Ohio-4583, ¶ 17 (4th Dist.) ("given the time constraints and complexity of a trial court's docket, 58 days is a reasonable length of time to continue a jury trial"); *State v. Smith*, 2011-Ohio-602, ¶ 26-33 (4th Dist.) (holding that 45-day and 78-day continuances were reasonable); *State v. Hughes*, 2010-Ohio-2969, ¶ 9 (4th Dist.) ("[w]e are cognizant of the burdensome caseloads in Ohio trial courts and do not believe that a

two month continuance is necessarily unreasonable"); *State v. Judd*, 1996 WL 532180, *4 (10th Dist. Sept. 19, 1996) (75-day sua sponte trial continuance "was for good cause and was both necessary and reasonable, given that the trial court entered upon the record that it was engaged in another criminal trial").

{¶ 32} " '[I]t is difficult, if not unwise, to establish a per se rule of what constitutes "reasonableness" ' when determining the length of a continuance for speedy trial purposes." *Monroe* at ¶ 34, quoting *Saffell* at 91. Here, we do not find that two and a half months was an unreasonably long continuance for Sweeney's jury trial. Therefore, because the sua sponte trial continuance from August 17, 2022, to November 2, 2022, was reasonable in both purpose and length, we find that, pursuant to R.C. 2945.72(H), speedy-trial time was tolled during that period.

{¶ 33} On November 4, 2022, the State dismissed Case No. 22-CR-238 without prejudice and Sweeney's trial did not go forward on November 2, 2022, as scheduled. During the hearing on Sweeney's speedy-trial motion to dismiss, the trial court stated: "I'm not sure why that trial didn't go forward on [November] 2nd other than the Court may have been informed, most likely was informed by the Prosecutor that they were going to dismiss the case and the filing just didn't happen until November 4th." Hearing Tr. (Sept. 19, 2023), p. 7. Therefore, we find that the period between the November 2 trial date and the November 4 dismissal counts against the speedy-trial calculation, meaning that two days of speedy-trial time elapsed, making the total speedy-trial calculation 139 days (18 +119 + 2 = 139).

{¶ 34} On November 7, 2022, Sweeney was reindicted in the instant case for the

same conduct for which he had originally been indicted in Case No. 22-CR-238. The Supreme Court of Ohio has explained that, for purposes of calculating speedy-trial time, " 'the time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim.R. 12[(J)].' " *State v. Azbell*, 2006-Ohio-6552, ¶ 17, quoting *Broughton*, 62 Ohio St.3d 253, at paragraph one of the syllabus. *See also City of Westlake v. Cougill*, 56 Ohio St.2d 230 (1978) (excluding the time between the nolle prosequi and the date of the service of summons in the second action, since no charges were pending against appellee during this period). We note that speedy-trial "time does not . . . begin to run upon the re-filing of the new charges, rather it begins to run when the defendant is arrested or receives service of summons on the new charge." *State v. Radabaugh*, 2007-Ohio-153, ¶ 12 (4th Dist.), citing *Cougill* and *Broughton*. *See also State v. Cosby*, 1993 WL 169119, *1 (2d Dist. May 7, 1993).

**{¶ 35}** In this case, there is no indication that Sweeny was held in custody or was continued on bail after Case No. 22-CR-238 was dismissed with prejudice. Because Sweeney was served with the summons on the reindicted charges on November 10, 2022, his speedy-trial time was tolled between the November 4th dismissal of Case No. 22-CR-0238 and the November 10th service of summons.

**{¶ 36}** Once Sweeney was reindicted, the trial court scheduled Sweeney's case for a jury trial to commence on December 13, 2022. No tolling events occurred while Sweeney was awaiting trial during that time. Although Sweeney filed a motion to compel

photographic evidence on November 16, 2022, the motion did not delay the December 13 trial date, as the trial court sustained the motion to compel without a hearing on November 18, 2022. Therefore, 33 days of speedy-trial time elapsed between November 10th and December 13th, making the total speedy-trial calculation 172 days (18 + 119 + 2 + 33 = 172).

{¶ 37} The trial did not go forward on December 13 as scheduled because the trial court issued a third sua sponte trial continuance and rescheduled Sweeney's trial to occur two and a half months later on February 28, 2023. On December 14, 2022, the trial court issued a journal entry explaining that Sweeney's trial had to be continued due to the court's "presiding over an aggravated murder trial in *State v. Noel Coles, Jr.*, Case Number 21-CR-0756." As previously discussed, scheduling and docketing conflicts are reasonable grounds for a trial continuance, and two and a half months is not an unreasonably long continuance for a jury trial. Because the sua sponte trial continuance from December 13, 2022, to February 28, 2023, was reasonable in purpose and length, we find that, pursuant to R.C. 2945.72(H), Sweeney's speedy-trial time was tolled during that period.

{¶ 38} The trial did not go forward on February 28 because the trial court ordered a fourth sua sponte trial continuance. On March 1, 2022, the corresponding journal entry explained that Sweeney's trial had to be continued due to the court's "presiding over a drive-by shooting jury trial in *State v. Isaiah Frederick*, Case Number 22-CR-0365." The trial court then rescheduled Sweeney's trial to occur four and half months later on July 12, 2023.

**{¶ 39}** Sweeney cites *State v. Wentworth*, 54 Ohio St.2d 171 (1978) for the proposition that the trial court's four-and-a-half-month continuance was unreasonable. In *Wentworth*, the Supreme Court of Ohio held that an order continuing a case for trial to a date more than double the 90-day time limitation and stating that the continuance was necessary because of a crowded court docket was not a reasonable continuance under R.C. 2945.72(H) in the absence of any explication of such reason appearing in the record. In so holding, the court in *Wentworth* explained:

> [W]e are not prepared to hold that any continuance of the length granted here, based upon docket congestion, is unreasonable regardless of attendant circumstances and conditions. We do conclude, however, that where the continuance is of such length that it is facially unreasonable and seriously open to question, and thus outside the rationale upon which *Lee* is based, the attendant facts and circumstances must be included in the record in sufficient detail so that the necessity and reasonableness of the continuance is demonstrable. . . .For this court to require less is to foreclose effective appellate review and, of necessity, to undercut a meaningful judicial implementation of R.C. 2945.71 through 2945.73.

*Id*. at 175.

**{¶ 40}** Sweeney also cites *State v. Baker*, 2006-Ohio-2516 (12th Dist.), a case in which "the trial court provided no justification for its decision to continue the trial date for approximately four and one-half months[.]" *Id*. at ¶ 64.

**{¶ 41}** Unlike *Wentworth* and *Baker*, the record of this case includes the attendant

facts and circumstances surrounding the four-and-a-half-month continuance in sufficient detail so as to demonstrate its necessity and reasonableness. The record indicates that after taking Sweeney's speedy-trial motion to dismiss under advisement and conferring with the court bailiff, the trial court provided the following reasoning for the lengthy continuance:

The Court had ten (10) to twelve (12) trials scheduled per week from February 28, 2023 until July 12, 2023. A substantial number of these cases actually proceeded to trial including, but not necessarily limited to, the following:

State v. Isaiah Frederick, 22-CR-0365(B) (drive-by shooting)

State v. Verlynia Murphy, 22-CR-0405 (reckless homicide)

State v. Davonne Tanksley, 22-CR-0522(A) (attempted murder)

State v. Deirdre Cordell, 22-CR-0493 (child endangering)

State v. Traymonta McKinney, 22-CR-0070(A) (having weapons while under disability)

State v. Tayshawn Heatly, 22-CR-0784 (abduction)

State v. Melanie Ramey, 22-CR-0938 (felonious assault)

State v. Matthew Miner, 22-CR-0646 (assault)

State v. Dean Baker, 23-CR-0071 (murder)

Moreover, it was difficult for the Court to schedule trials in the month of June [2023] for the following reasons: (1) The second week of the murder trial in State v. Dean Baker went through June 8th; (2) This Judge was out

of the office the week of June 12th (originally for a judicial conference, but this Judge did not end up attending the conference due to a family medical emergency that required him to be out of the office for the week); and (3) the prosecutors were out of the office the week of June 19th for their summer conference.

Entry (Oct. 12, 2023), p. 3.

{¶ 42} We find it significant that all of the cases tried during the fourth-and-a-half-month period in question were all criminal cases and that most of the cases involved serious offenses with case numbers indicating that they were filed before Sweeney's reindictment. Based on the aforementioned reasons given by the trial court, we find that the sua sponte trial continuance from February 28th to July 12th was reasonable in purpose and length. Accordingly, no speedy-trial time elapsed during that period.

{¶ 43} On July 12, 2023, the parties appeared at court for trial, but the trial was continued due to the discovery issue concerning the photographs that the State had failed to turn over to the defense. After the parties discussed the matter on the record, and after the trial court heard testimony from an employee of the prosecutor's office who handled discovery for all of the State's cases, the State conceded that it had inadvertently failed to provide the defense with the photographs in question. Because the State did not have the photographs on hand, and because the defense additionally claimed that the State had failed to turn over the body camera video, the trial court set the matter for a discovery review hearing on July 28, 2022, to determine if any discovery sanctions should be imposed. At the discovery review hearing, the trial court found no bad faith on

the part of the State and imposed no discovery sanctions other than a trial continuance to September 19, 2023.

{¶ 44} Because the continuance from July 12 to September 19 was attributable to the State's failing to provide discovery to the defense, we find that the speedy-trial time continued to run during that continuance. *See Knight*, 2005-Ohio-3179, at ¶ 19 (2d Dist.) (where a motion is "necessitated by the State's failure to fully comply with Defendant's earlier discovery request, any delay caused by the motion is not chargeable to Defendant and does not toll the speedy trial time"); *State v. Cheatham*, 2021-Ohio-2495, ¶ 19 (1st Dist.) ("[w]hen the circumstances of a case demonstrate that a delay was caused by the state, 'it would make a mockery of justice to attribute the delay to' the defendant"), quoting *Martin*, 2019-Ohio-2010, at ¶ 25. Accordingly, the 69 days that elapsed between July 12th to September 19th counted against Sweeney's speedy-trial time, making the total speedy-trial calculation 241 days (18 + 119 + 2 + 33 + 69 = 241).

{¶ 45} The day before the trial was scheduled to commence, Sweeney filed his speedy-trial motion to dismiss. When the parties appeared at court for trial the following day, Sweeney agreed to a continuance of his trial so that the court could have more time to review and rule on the speedy-trial issue. In doing so, Sweeney acknowledged that the resulting continuance would toll his speedy-trial time. The trial was thereafter rescheduled for October 26, 2023. Because the continuance from September 19th to October 26th was attributable to Sweeney's speedy-trial motion to dismiss, pursuant to R.C. 2945.72(E), the speedy-trial time was tolled during that period.

{¶ 46} On October 12, 2023, the trial court issued a decision overruling Sweeney's

speedy-trial motion to dismiss, and Sweeney's trial was thereafter held on October 26. Based on the foregoing analysis, 241 speedy-trial days had elapsed before Sweeney was brought to trial, which was within the 270-day statutory limit. Accordingly, Sweeney's statutory right to a speedy-trial was not violated. The foregoing analysis supporting that decision is summarized in the table shown below.

| Time Period | Event | Speedy-Trial Days Counted |
| --- | --- | --- |
| Mar. 15, 2022 | Sweeney indicted and arrested in Case No. 22-CR-238. | 0 days |
| Mar. 16 to Mar. 22, 2022 | Sweeney in jail for six days. He was released on bond on March 22, 2022. | 6 x 3 (triple count) = 18 days |
| Mar. 22 to July 19, 2022 | Sweeney awaiting trial date of July 19, 2022. | 119 days |
| July 19 to Aug. 17, 2022 | Trial continued from July 19, 2022 to August 17, 2022 on the Court's motion due to Sweeney's having COVID. | 0 days |
| Aug. 17 to Nov. 2, 2022 | Trial continued to November 2, 2022 on court's motion due to the court's presiding over an OVI jury trial in *State v. Michael Wood*, Case No. 22-CR-488. | 0 days |

| Nov. 2 to Nov. 4, 2022 | Trial is not held on November 2, 2022, as scheduled. On November 4, 2022, the State dismisses Case No. 22 CR 238 without prejudice. | 2 days |
|---|---|---|
| Nov. 4 to Nov. 10, 2022 | No charges pending against Sweeney until he is reindicted for the same conduct on November 7, 2022, and served with a summons on indictment on November 10, 2022. | 0 days |
| Nov. 10 to Dec. 13, 2022 | Sweeney awaits trial scheduled for December 13, 2022. | 33 days |
| Dec. 13 to Feb. 28, 2023 | Trial continued from December 13, 2022 to February 28, 2023 on motion of trial court due to the court presiding over a murder trial in *State v. Noel Coles, Jr.*, Case No. 21-CR-0756. | 0 days |
| Feb. 28 to July 12, 2023 | Trial continued from February 28, 2023, to July 12, 2023, on motion of trial court due to the court's presiding over a drive-by-shooting trial in *State v. Isiah Frederick*, Case No. 22-CR-365(B). | 0 days |

| | | |
|---|---|---|
| July 12 to Sept. 19, 2023 | July 12th trial continued due to the State's failing to provide discovery to Sweeney, which necessitated a discovery review hearing on July 28, 2023. Trial was rescheduled for September 19, 2023. | 69 days |
| Sept. 19 to Oct. 26, 2023 | Trial continued from September 19, 2023, to October 26, 2023, due to Sweeney's motion to dismiss his case based on a speedy-trial violation, which the trial court denied on October 12, 2023. | 0 days |
| **Total Speedy-Trial Days Counted:** | | **241 days**<br>**(18 + 119 + 2 + 33 + 69)** |

*Relevant Constitutional Speedy-Trial Law*

**{¶ 47}** " 'To determine whether a defendant's constitutional right to a speedy trial has been violated, a court should apply the four-factor balancing test adopted by the United States Supreme Court in [*Barker v. Wingo*, 407 U.S. 514 (1972)].' " *State v. Hart*, 2022-Ohio-4550, ¶ 90 (2d Dist.), quoting *State v. Wagner*, 2021-Ohio-1671, ¶ 14 (2d Dist.). " 'The factors include: (1) the length of the delay "between accusation and trial"; (2) the reason for the delay; (3) the defendant's assertion, if any, of his right to a speedy

trial; and (4) the prejudice, if any, to the defendant.' " *Id.*, quoting *Wagner* at ¶ 14, quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992). (Other citation omitted.)

**{¶ 48}** " 'None of the factors is controlling because a "balancing test necessarily compels" a court to evaluate an alleged speedy trial violation "on an ad hoc basis," meaning that the court must consider the totality of the circumstances.' " *Id.,* quoting *Wagner* at ¶ 15, quoting *Barker* at 530. (Other citation omitted.) "However, . . . the length of the delay is a particularly important factor as it 'is to some extent a triggering mechanism.' " *State v. Lee*, 2024-Ohio-1802, ¶ 9 (2d Dist.), quoting *Barker* at 530. This is because " '[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' " *Id.*, quoting *Barker* at 530. "The length of delay becomes presumptively prejudicial as it approaches one year in length." *Id.*, citing *Doggett at* 652, fn. 1; *State v. Adams*, 2015-Ohio-3954, ¶ 90.

**{¶ 49}** When reviewing the second *Barker* factor—the reason for the delay in bringing the defendant to trial—"[o]nly the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor." *State v. Triplett*, 78 Ohio St.3d 566, 569 (1997), citing *Doggett* at 658. The United States Supreme Court explained that:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such

circumstances must rest with the government rather than with the defendant.

(Footnote omitted.) *Barker* at 531.

**{¶ 50}** "Deliberate dilatory acts are weighted heavily against the state, while negligent acts are weighted less heavily against the state." *State v. Duncan*, 2021-Ohio-3229, ¶ 16 (1st Dist.), citing *Barker* at 531. "[I]ntertwined within this *Barker* analysis is whether the defendant shares any responsibility for the delay." *State v. Rentas*, 2022-Ohio-2412, ¶ 32 (8th Dist.), citing *Triplett* at 570.

**{¶ 51}** As to the third *Barker* factor—whether the defendant asserted his right to a speedy trial— we note that " '[i]t is well established under our law that the right to a speedy trial conferred by the Constitution is not self-executing." *State v. Perkins*, 2009-Ohio-3033, ¶ 12 (2d Dist.), quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140 (1963). " 'Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to invoke the protection of the Constitution. . . .In other words, there can be no denial where there has been no demand.' " *Id.*

**{¶ 52}** The fourth *Barker* factor—whether the defendant was prejudiced by the delay—"should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker* at 532. These interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." (Footnote omitted.) *Id.* The third interest is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

*Constitutional Speedy-Trial Analysis*

**{¶ 53}** Sweeney was tried one year and seven months after his arrest. Because Sweeney's trial was delayed for well over a year, the length of the delay in bringing him to trial was presumptively prejudicial. Accordingly, the length-of-delay factor weighed in Sweeney's favor and necessitated balancing the other three factors in *Barker*.

**{¶ 54}** When reviewing the second *Barker* factor, we find that the reason for the delay in bringing Sweeney to trial was primarily attributable to the multiple sua sponte trial continuances that were caused by the trial court's congested docket and due to Sweeney's contracting COVID. As previously discussed, those continuances were reasonable in purpose and length; therefore, they did not weigh heavily in Sweeney's favor. Although the State caused some delay by dismissing Sweeney's original case and by inadvertently failing to turn over discovery, the total delay that resulted from that conduct was only 77 days and was not the product of any deliberate, dilatory conduct or bad faith. Accordingly, that conduct was not weighed heavily against the State. Again, the primary reason for the delay in bringing Sweeney to trial was the multiple sua sponte continuances that were reasonable in purpose and length.

**{¶ 55}** The third *Barker* factor weighed in Sweeney's favor since he asserted his right to a speedy trial by filing his motion to dismiss on September 18, 2023.

**{¶ 56}** The fourth *Barker* factor concerning prejudice did not weigh in Sweeney's favor. While we do not discount the continued anxiety and concern that Sweeney was likely living with while his case was pending, we find it significant that he was released on

bond after being in jail for only six days. Therefore, he was not sitting in jail awaiting trial during the entire delay. We also fail to see how Sweeney's defense was impaired by the delay. If anything, the delay gave his defense counsel more time to prepare for trial. Accordingly, we find that the prejudice factor weighed against Sweeney.

{¶ 57} Because the reason for the delay in bringing Sweeney to trial was primarily attributable to reasonable, sua sponte trial continuances, and because Sweeney was not prejudiced by the delay, we find that under the totality of the circumstances, his constitutional right to a speedy trial was not violated.

{¶ 58} Because Sweeney's statutory and constitutional rights to a speedy-trial were not violated, his second assignment of error is overruled.

**First Assignment of Error**

{¶ 59} Under his first assignment of error, Sweeney contends that the trial court erred by failing to dismiss his case based on the State's discovery violations. We disagree.

*Standard of Review*

{¶ 60} The trial court's response to an alleged discovery violation is reviewed for an abuse of discretion. *State v. Miller*, 2023-Ohio-2508, ¶ 41 (2d Dist.), citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 2013-Ohio-966, ¶ 34. "An abuse of discretion most often involves an

unreasonable decision that is not supported by a sound reasoning process." *State v. McHenry*, 2021-Ohio-3118, ¶ 16 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34, citing *State v. Morris,* 2012-Ohio-2407, ¶ 14.

### *Relevant Law Regarding Discovery Violations*

{¶ 61} "Crim.R. 16 governs the discovery process and delineates information subject to disclosure and information not subject to disclosure, and it sets forth the proper time period for motions for discovery." *State v. Cleaver*, 2007-Ohio-5977, ¶ 24 (2d Dist.). If a party fails to comply with the disclosure requirements of Crim.R. 16, the trial court has the discretion to "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 62} "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party." *Darmond* at ¶ 20. "In exercising its discretion when the discovery violation is committed by the State, trial courts should consider: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and (3)

whether the accused was prejudiced." *State v. Hunt*, 2019-Ohio-2352, ¶ 30 (2d Dist.), citing *Darmond* at ¶ 35, citing *Parson* at syllabus.

**{¶ 63}** "[W]hen deciding whether to impose a sanction, [the trial court] must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus. "The purpose of the discovery rules 'is to prevent surprise and the secreting of evidence favorable to one party.' " *Darmond* at ¶ 19, quoting *Lakewood* at 3.

*Relevant Facts and Analysis*

**{¶ 64}** On November 1, 2022, Sweeney filed a motion to compel in the originally filed case—Case No. 22-CR-238. The motion requested that the trial court order the State to provide the defense with photographs taken by law enforcement that were never turned over in discovery. Sweeney filed the motion just a few days before the State dismissed the original case. Given the dismissal, the trial court never had an opportunity to rule on the motion. However, after Sweeney was reindicted, he filed a second motion to compel the same photographs, which the trial court granted on November 18, 2022.

**{¶ 65}** Approximately eight months later, the parties appeared at court for trial on July 12, 2023. Before the trial could start, Sweeney's defense counsel advised the trial court that, while preparing for trial the night before, he realized the State had never provided him with the photographs that were the subject of his motion to compel. Sweeney's defense counsel explained that, after the original case was dismissed and after Sweeney was reindicted, he had e-mailed the State and asked for the photographs

at issue and filed the motion to compel that was granted by the trial court on November 18. Because the State never provided the photographs as ordered, Sweeney's counsel moved to have the case dismissed.

{¶ 66} In response, the State did not dispute that the defense had requested the photographs in question after Sweeney's reindictment. Initially, the State advised the trial court that it had provided the photographs to the defense sometime after November 17, 2022. The State, however, had no way of verifying that the photographs were provided to the defense and could not specify the date on which they had been provided. The State indicated that the photographs would have been copied and provided to the defense by an employee of the prosecutor's office who handles the discovery for all of the State's cases. The employee in question appeared at court the same day and testified that she had received the photographs in question from the sheriff's office on November 17, 2022, via a disc. The employee testified that when she received the disc of photographs, she noted their receipt in the office's internal system and placed the disc in the prosecutor's case file. The employee testified, however, that she never made a copy of the disc.

{¶ 67} Following the employee's testimony, the State explained that it had misunderstood the discovery process utilized by its office and conceded that it had inadvertently failed to provide the defense with the photographs at issue. The State apologized for the oversight and explained that it had believed the photographs were provided to the defense after they were received from the sheriff's office.

{¶ 68} Once it had been determined that the photographs were not provided to the

defense, the trial court found no bad faith on the part of the State and ordered the State to immediately turn over the photographs so that the defense could review them in the courtroom before trial. The State, however, did not have the correct photographs on hand. While explaining to the court that it was not then in possession of the photographs, the State mentioned the body camera video. Sweeney's counsel then advised the trial court that the defense had also never received any body camera video from the State. The State, however, asserted that it had provided the body camera video to the defense during the first round of discovery in Case No. 22-CR-238. Given these circumstances, the trial court continued Sweeney's trial and set the matter for a discovery review hearing on July 28, 2023.

{¶ 69} After court adjourned on July 12, the State provided the defense with the photographs and body camera video the following day. The photographs depicted the drugs at issue and the scene where the drugs were found. The body camera video depicted Sweeney's interaction with officers while he was being arrested and the area where the drugs were located.

{¶ 70} During the July 28 discovery review hearing, Sweeney's counsel reiterated the argument that the case should be dismissed as a result of the State's previously failing to provide the photographs and body camera video to the defense. In response, the State once again conceded that it had inadvertently failed to provide the photographs to the defense, but it maintained that the body camera video had been provided during the first round of discovery.

{¶ 71} Although the trial court found that the State had been negligent in failing to

tender the discovery, it determined that the State had not acted in bad faith. The trial court indicated that any confusion with regard to the discovery was understandable because Sweeney had multiple cases filed against him. The trial court found that no sanctions were warranted other than a trial continuance so that the defense could have time to review the photographs and body camera video.

{¶ 72} Upon review, we find that the trial court's decision to continue Sweeney's trial was reasonable and not an abuse of discretion. This is because the record indicates that the State's discovery violation was not willful or prejudicial. Indeed, the resulting trial continuance gave Sweeney time to review the photographs and body camera video and to prepare his defense accordingly.

{¶ 73} Sweeney suggests that the State's discovery violation prejudiced him because it negatively impacted his right to a speedy trial. However, as discussed under Sweeney's second assignment of error, Sweeney's speedy-trial time was not tolled during the discovery-violation continuance. Rather, his speedy-trial time continued to run for 69 days during that period of time. Accordingly, we fail to see how the discovery-violation continuance prejudiced him with regard to his right to a speedy trial.

{¶ 74} We also find that the trial court's decision to continue trial complied with its duty to impose the least severe sanction that was consistent with the rules of discovery. Dismissing the case in its entirety would not have complied with that duty. For all of the foregoing reasons, we cannot say the trial court's failure to dismiss Sweeney's case for the State's discovery violation was an abuse of discretion.

{¶ 75} Sweeney's first assignment of error is overruled.

**Third Assignment of Error**

{¶ 76} Under his third assignment of error, Sweeney contends that his conviction for aggravated possession of drugs was not supported by sufficient evidence. We disagree.

*Standard of Review*

{¶ 77} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

*Relevant Law and Analysis*

{¶ 78} As previously discussed, Sweeney was convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), which prohibits a person from "knowingly obtain[ing], possess[ing], or us[ing] a controlled substance or a controlled

substance analog." R.C. 2925.11(A). Sweeney does not dispute that the methamphetamine at issue in this case was a controlled substance. Rather, Sweeney argues that the State failed to present sufficient evidence establishing that he was in possession of the methamphetamine.

{¶ 79} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession of a drug may be either actual physical possession or constructive possession." *State v. Mabry*, 2007-Ohio-1895, ¶ 18 (2d Dist.), citing *State v. Butler*, 42 Ohio St.3d 174 (1989). "A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982) and *State v. Wolery*, 46 Ohio St.2d 316 (1976).

{¶ 80} " 'The State may prove constructive possession solely through circumstantial evidence' as '[c]ircumstantial evidence and direct evidence have the same probative value.' " *State v. Ramos*, 2019-Ohio-3588, ¶ 44 (2d Dist.), quoting *State v. Charlton*, 2010-Ohio-1683, ¶ 23 (2d Dist.). (Other citations omitted.) "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.' " *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988), quoting *Black's Law Dictionary* (5th Ed.1979).

{¶ 81} "Readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence sufficient to support a conclusion that he constructively possessed those drugs." *State v. Battle*, 2007-Ohio-2977, ¶ 20 (2d Dist.), citing *State v. Miller*, 2002-Ohio-4197 (2d Dist.). "In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the facts and circumstances surrounding its discovery." *State v. Pullen*, 2012-Ohio-1858, ¶ 37 (2d Dist.), citing *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998) and *State v. Pounds*, 2006-Ohio-3040 (2d Dist.).

{¶ 82} In this case, Det. Moody's trial testimony established that, just moments before he discovered the methamphetamine in question, he observed Sweeney crouch down next to a parked Cadillac in the exact same area where the methamphetamine was found. Moreover, the evidence established that a cellphone was found lying on the ground next to the methamphetamine—a cellphone that Sweeney's girlfriend testified possibly belonged to Sweeney. In addition, Sweeney can be heard asking about the cellphone on the body camera video, as Sweeney asked the officers: "[W]hen can I get the phone?" State's Ex. 8.

{¶ 83} Based on the aforementioned evidence, a rational factfinder could have reasonably concluded that the cellphone lying next to the methamphetamine belonged to Sweeney. The fact that Sweeney's cellphone was found next to the methamphetamine, and the fact that Det. Moody observed Sweeney crouched down in the exact same area where the cellphone and methamphetamine were found just moments before discovering them, created a reasonable inference that Sweeney threw the methamphetamine under

the Cadillac when he saw the officers approaching. When viewed in the light most favorable to the State, we find this circumstantial evidence would permit a rational factfinder to find beyond a reasonable doubt that Sweeney had knowingly possessed the methamphetamine that was found underneath the Cadillac. Therefore, Sweeney's conviction for aggravated possession of drugs was supported by sufficient evidence.

**{¶ 84}** Sweeney's third assignment of error is overruled.

## Conclusion

**{¶ 85}** Having overruled all three of Sweeney's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.